No. 28,359.

THE EXCHANGE STATE BANK, *Appellee*, v. THE CENTRAL TRUST COMPANY, *Appellant;* MINNIE B. HAAS et al., *Defendants.*

(273 Pac. 477.)

Opinion filed January 12, 1929.

G. *Dean McElhenny, Bennett R. Wheeler, S. M. Brewster, John L. Hunt* and *Virgil V. Scholes,* all of Topeka, for the appellant.

O. *P. May,* of Atchison, for the appellee; W. *P. Waggener, J. M. Challiss* and *B. P. Waggener,* all of Atchison, of counsel.

The opinion of the court was delivered by

BURCH, J.: The question to be determined is whether the Central Trust Company has a mortgage lien on land superior to an interest

claimed by the Exchange State Bank. The district court determined the question in favor of the bank. The trust company appeals.

On January 2, 1920, W. A. Caskey executed and delivered to P. M. Haas a mortgage of the land to secure a promissory note of $11,000. The mortgage was recorded on January 16, 1920. On January 20, 1920, Haas executed and delivered to the Exchange State Bank of Atchison his promissory note for $11,000, and as collateral security indorsed and delivered to the bank the Caskey note, and assigned to the bank the Caskey mortgage. The assignment was in writing, was duly acknowledged, and was dated January 20, 1920. The assignment was not filed for record until a date which will appear in the chronological order of events.

On March 16, 1925, Haas commenced an action in the district court to recover on the Caskey note and to foreclose the mortgage. The petition alleged that Haas was owner of the note and holder of the mortgage, and otherwise stated a cause of action. The necessary parties were made defendants, and were personally served. On April 18, 1925, judgment was rendered in favor of Haas for the amount due on the note and for foreclosure of the mortgage. The judgment included a finding that Haas was owner and holder of the mortgage and was entitled to foreclose it. An order of sale was duly issued, and on June 1, 1925, the land was sold at sheriff's sale to Haas, for $12,112. On June 17, 1925, the clerk of the district court entered on the margin of the record of the mortgage in the office of the register of deeds, the statement relating to foreclosure of the mortgage which he was required to make by R. S. 67-313. On November 14, 1925, the sale was confirmed and a certificate of purchase was issued to Haas.

On April 17, 1926, the Exchange State Bank placed on record the assignment of the mortgage. The bank had no knowledge or notice of any of the foreclosure proceedings and at all times had possession of the note and mortgage.

On May 17, 1926, the Central National Bank of Topeka loaned Haas $6,000 and took from him as collateral security an assignment of the certificate of purchase. On December 6, 1926, the period of redemption having expired and the landowner not having redeemed, Haas executed to the Central Trust Company of Topeka a mortgage of the land to secure a loan of $6,500. On December 7, 1926, a sheriff's deed was executed and delivered to Haas, which was recorded on December 8, 1926. The trust company's mortgage

was filed for record on December 10, 1926. On December 28, 1926, the trust company, by direction of Haas, paid to the Central National Bank the sum due to it, $6,060, and gave Haas a check for $440. The trust company's loan was made in reliance on an abstract of title certified by a bonded abstracter. The abstract did not disclose the assignment of the mortgage to the Exchange State Bank, and neither the Central National Bank nor the Central Trust Company had any actual notice or knowledge of the assignment, or of any interest of the Exchange State Bank in the land.

On March 21, 1927, the Exchange State Bank discovered the state of affairs then existing, and on April 5, 1927, commenced the action which resulted in the judgment appealed from. Haas was dead. The executor of his will, Kendall M. Haas, and his devisees and heirs, Minnie B. Haas and Kendall M. Haas, were made parties defendant. Caskey and his wife and the Central Trust Company were made parties defendant. The petition pleaded the Caskey note and mortgage to Haas, the assignment to plaintiff, and the foreclosure proceedings, which were alleged to be fraudulent as to plaintiff. The theory of the action is disclosed by the prayer of the petition, which reads as follows:

"Wherefore, plaintiff prays that it be adjudged to be the owner of and entitled to the possession of said real estate, and that the defendants hold the same in trust for plaintiff, and that said defendants be required to execute a proper deed of conveyance of the legal title to said property and to surrender up possession thereof, and that its title thereto be quieted as against all of the defendants, and for such other and further relief as to the court may seem just and equitable in the premises, and for costs of suit."

The petition was subsequently amended by setting up the Haas note to plaintiff, on which there was due the sum of $10,400 and interest, and by stating that the Caskey mortgage was assigned to plaintiff as collateral security to the Haas note. The amended petition concluded as follows:

"That the plaintiff is the owner of the land described in its original petition, but that said land should be sold by order of the court so that the proceeds thereof should be applied on the claims of the respective parties as their interests may appear.

"Wherefore, plaintiff renews and adopts all of the allegations and prayer in its original petition, and prays further that said land be sold under order of the court and that the proceeds of such sale be applied: 1. To the payment of any and all taxes due thereon; 2. In payment of plaintiff's note of $10,400, with interest at 10 per cent from March 10, 1927; 3. The balance, if any, to be paid to such of the defendants as establish their right thereto."

The Central Trust Company answered, and claimed a first lien. Other defendants disclaimed. A money judgment was rendered in favor of plaintiff against the executor of the Haas estate, on the Haas note, for $11,269.55. The court found and adjudged that plaintiff was owner of the land to the extent of its money judgment; found that Minnie B. Haas, Kendall M. Haas, Kendall M. Haas, executor, and the Central Trust Company, held the legal title to the land in trust for plaintiff to the extent of its money judgment; found that Minnie B. Haas, Kendall M. Haas, Kendall M. Haas, executor, and the Caskeys, had no interest in the land; and found and adjudged that the interest of the Central Trust Company was inferior to that of plaintiff. The land was ordered sold subject to redemption by the Central Trust Company only. Minnie B. Haas, Kendall M. Haas, Kendall M. Haas, executor, and the Caskeys, were adjudged to have no interest whatever in the land, and they were barred from claiming any interest.

In March, 1928, the land was sold at sheriff's sale to plaintiff for $11,234.96, and the sale was confirmed on March 23, 1928. The proceeds were ordered to be applied, after payment of costs and taxes, to payment of plaintiff's judgment, and if any balance remained, to satisfaction of the Central Trust Company's note and mortgage.

When plaintiff discovered what Haas had done, it could choose one of two courses of action: It could repudiate the foreclosure proceedings on the ground of fraud, and itself foreclose the Caskey mortgage; or it could confirm the regularity and validity of the foreclosure proceedings as vesting title in Haas, and hold him as trustee of the title for plaintiff's benefit.

Consummation of the foreclosure proceedings did not of itself split the interest in the land into two denominations, one a legal interest vested in Haas and the other an equitable interest vested in plaintiff. Plaintiff was still a mortgagee unless and until it elected to become something else. It had privilege to disregard the foreclosure proceeding and power to foreclose its own mortgage, and in that event the Haas foreclosure proceeding became a nullity for all purposes so far as plaintiff and the parties to the foreclosure suit were concerned. If plaintiff elected to confirm the foreclosure Haas had all the interest in the land anybody could acquire by foreclosure of a first mortgage, and plaintiff had power to compel

him to hold that entire interest for plaintiff's benefit and to make an effective conveyance to plaintiff. Plaintiff chose to confirm the foreclosure proceedings and must abide the consequences.

The Caskey mortgage never has been foreclosed, unless Haas foreclosed it. The judgment in plaintiff's favor, which it defends here, conclusively established the effectiveness of the foreclosure. All interests in the land, ownership, possession, and right of redemption were denied by the judgment, except the interests of plaintiff and the trust company. Plaintiff was even given judgment against the tenant of the land for the landlord's share of the crops for the year 1927. The heirs, devisees and executor of Haas obtained the title to the land which the court decreed they held for plaintiff, from but one source, Haas, and he obtained it by but one means, the foreclosure proceedings. Of course the trust company did not have, or pretend to have, legal title to the land. It held a mortgage given by Haas to secure a promissory note. Unless the foreclosure were effective to the extent that it gave Haas power to create a valid mortgage lien on the land the trust company has no lien, and could have no right of redemption. The result is plaintiff may not impeach the integrity of the foreclosure proceedings which gave Haas ownership for plaintiff's benefit; and in appropriating to itself the benefit of the foreclosure proceedings plaintiff cannot get rid of interests innocently acquired from Haas without notice of his trusteeship for plaintiff.

The only basis for claim that the trust company had notice that the Haas foreclosure of the Caskey mortgage might be for plaintiff's benefit was the record of the assignment. The record of the assignment was ineffectual for that purpose.

When judgment was rendered in the foreclosure suit, the Caskey note was extinguished. (*Price v. Bank,* 62 Kan. 735, 64 Pac. 637; *Remington v. Hudson,* 64 Kan. 43, 46, 67 Pac. 636; *Redden v. Bank,* 66 Kan. 747, 71 Pac. 578; *Rossiter v. Merriman,* 80 Kan. 739, 743, 104 Pac. 858; *City of Topeka v. Ritchie,* 102 Kan. 384, 387, 170 Pac. 1003.)

When the judgment was rendered the mortgage securing the Caskey note was extinguished:

"A mortgage lien is merged into a decree foreclosing it. After that an action cannot be maintained on the indebtedness secured by the mortgage or for a foreclosure of the mortgage a second time." (*Dumont v. Taylor,* 67 Kan. 727, syl., 74 Pac. 234.)

"In the present suit the plaintiffs appear to rely for a foundation on causes of action which were finally merged and extinguished in the judgment entered in their favor in the foreclosure case. All the claims they had against the real estate by virtue of the mortgage, interest and costs, as well as all claims against the property by reason of their tax deed, were merged in that judgment, . . . All their causes of action were merged in the final judgment, and thereby extinguished." (*Hayes Bros. v. Waggener,* 98 Kan. 740, 743, 161 Pac. 584.)

When plaintiff amended its petition to permit a sale of the land it did not relinquish benefit of the foreclosure proceeding. It did not deny that the Caskey mortgage had been validly foreclosed, and claim as mortgagee. While for the purpose of holding Haas as trustee, plaintiff alleged the foreclosure was fraudulent as to plaintiff, plaintiff still claimed ownership of the land. Because the attitude plaintiff would take with reference to the status of the mortgage, whether alive or extinguished, rested in its own choice, equity will not relieve from the consequences of extinguishment of the mortgage by merger in the foreclosure judgment.

It is not material that plaintiff had possession of the Caskey note and mortgage, because plaintiff's superior interest in the land rested on the foreclosure proceedings; and the foreclosure notation made by the clerk of the district court on the margin of the record of the Caskey mortgage in the office of the register of deeds gave notice to the world that the mortgage was extinguished on April 18, 1925.

Constructive notice afforded by assignment of the Caskey mortgage to plaintiff dated from the time the instrument was filed for record, April 16, 1926. The effect of the assignment was the same as if it were executed and delivered on that day. (*Utley v. Fee,* 33 Kan. 683, 690, 7 Pac. 555; *Smith v. Worster,* 59 Kan. 640, 643, 54 Pac. 676; *Caldwell v. Bigger,* 76 Kan. 49, 54, 90 Pac. 1095.)

On April 16, 1926, the records disclosed there was no Caskey mortgage in existence. On the face of the record Haas had no power to affect interests in the land by assigning the dead instrument, and if the assignment had appeared on the abstract furnished to the trust company the trust company would have been at liberty to ignore it.

Waiving for the present the consequences of plaintiff's election, and treating the action as virtually one to preserve benefit of the Caskey mortgage, the result is the same. By failing to record the assignment plaintiff allowed the mortgagee to deal with the mort-

gage in such a manner that he extinguished it. After judgment the Caskey mortgage no longer had any potency as a source of interests in the land. Purchasers could derive interests through the judgment only, as a new source of interests. The assignment did not relate to any interest derived from that source, transferred nothing, and was nugatory as notice of acquired interest.

The assignment was written on the original mortgage, and recited that it sold, assigned, set over and conveyed unto the Exchange State Bank of Atchison, Kan., heirs and assigns, the within mortgage deed, the real estate conveyed, and the promissory note, debts and claims thereby secured. The mortgage conveyed no real estate, and the assignment affected the mortgage interest in the land only.

The judgment of the district court is reversed, and the cause is remanded with direction to award the Central Trust Company a lien superior to the interest of plaintiff, and to make such orders as will finally determine the interests of the trust company and the plaintiff on that basis.