No. 68,806
No. 69,267

BANK WESTERN, a Federal Savings Bank, *Appellant*, v. BILLY JOE HENDERSON, *et al., Defendants,* and MIDAMERICAN BANK & TRUST CO., *Appellee,* and MIDAMERICAN BANK & TRUST CO., *Appellee,* v. ETHALO'S INC., *et al., Defendants,* and BANK WESTERN, a Federal Savings Bank, *Appellant.*

(874 P.2d 632)

Opinion filed May 27, 1994.

*Richard L. Reid*, of Kansas City, argued the cause and was on the briefs for appellant.

*Michelle M. Suter*, of Kurlbaum Stoll Seaman Reefer Suter & Mustoe, P.C., of Kansas City, Missouri, argued the cause and was on the briefs for appellee.

The opinion of the court was delivered by

ABBOTT, J.: This is a consolidated appeal from judgments in two separate mortgage foreclosure actions involving the same tract of real estate. Three mortgage liens are involved. Bank Western is the assignee-holder of the first mortgage lien. Bank Western failed to record its assignment until after second and third mortgages were executed and filed and the third mortgage holder had foreclosed. The issue is priority of mortgage liens under the complex, but largely undisputed, facts of this case.

On September 8, 1971, Billy Joe Henderson and his wife, Marilyn Henderson, executed and delivered a purchase money first real estate mortgage on the property in question to James B. Nutter & Company (Nutter). Nutter is not a party to this appeal. This mortgage was for a principal consideration of $27,300 and was timely filed of record in Johnson County. In June 1973, this mortgage was assigned by Nutter to Lincoln Savings Bank (Lincoln). Lincoln timely placed its assignment of record.

In 1981, the Hendersons executed a second mortgage on the property in favor of CIT Financial Services, Inc., (CIT) in the principal amount of $20,000. This mortgage was placed of record in a timely manner. CIT changed its name to Hanover CS Corporation (Hanover), and later Hanover changed its name to American General Financial Services, Inc. (American General).

On March 25, 1988, the Hendersons executed and delivered a third mortgage covering the real estate to MidAmerican Bank & Trust Company (MidAmerican). This mortgage was for a principal consideration of $50,000, and it was placed of record by MidAmerican on March 31, 1988.

On April 15, 1988, Lincoln assigned the first mortgage to Bank Western, a federal savings bank. Bank Western did not record the assignment until a later date (fall of 1991).

The Hendersons went into business in 1988 and gave MidAmerican the third mortgage as additional collateral for the business loan. The business failed, and in early 1991 MidAmerican filed a mortgage foreclosure action (case No. 91-C-1124). MidAmerican obtained service on Lincoln and on Hanover by publication in The Legal Record and did not mail a copy of the publication notice to Lincoln because it did not have an address

for Lincoln (and did not inquire of the Hendersons where they were making their first mortgage payment). Bank Western was not named as a defendant and received no notice of the mortgage foreclosure action.

The Hendersons continued to make their first mortgage payment, and the first mortgage to Bank Western was current to May 1, 1991. On May 6, 1991, judgment was entered in case No. 91-C-1124, foreclosing MidAmerican's mortgage and holding Hanover and Lincoln to be in default. MidAmerican's mortgage was declared to be a first and prior lien. The property was ordered sold at sheriff's sale with a six-month period of redemption. On June 12, 1991, the sheriff's sale was held, and the property was purchased by MidAmerican. This sale was confirmed on June 21, 1991. We note that, on the date judgment was entered foreclosing MidAmerican's mortgage, Bank Western's assignment from Lincoln had not yet been placed of record. (It was recorded on either October 17 or November 17, 1991.)

As pointed out earlier, Hanover had changed its name to American General. American General had not been served with process in the mortgage foreclosure action and took the position that it had no notice of that action. American General filed a motion to set aside the default judgment against Hanover. This motion was granted. American General then filed a motion to add Bank Western as a party defendant. At some later time, American General and MidAmerican reached an agreement wherein MidAmerican paid American General the full amount of its second mortgage lien. Upon receipt of that amount, American General withdrew its motions and orders to set aside the default judgment and to add Bank Western as a defendant. Pursuant to an agreement between MidAmerican and American General, the order setting aside the sale was itself set aside on January 17, 1992, and the status quo was restored. The Hendersons were given an additional three months from January 17, 1992, within which to redeem the property.

Bank Western itself then moved to set aside that portion of the judgment in favor of MidAmerican dealing with the first mortgage. This motion was granted on May 28, 1992, and Bank West-

ern was made a party defendant and filed its answer and counterclaims.

Bank Western filed case No. 92-C-1185 in early 1992. The petition named as defendants the Hendersons, CIT, and MidAmerican and sought to obtain a judgment against the Hendersons in the unpaid amount of the note and to foreclose the first mortgage lien on the property. In this action, Bank Western sought to have its mortgage adjudged as the first and prior mortgage lien on the real estate and asked for a determination to the effect that whatever interest MidAmerican had in the property was inferior to the mortgage lien of Bank Western.

The trial court in case No. 92-C-1185 dismissed Bank Western's cause of action to foreclose its mortgage by journal entry filed April 29, 1992. It held that Bank Western had no interest in the property described in its first mortgage. The trial court concluded that since the interest of its assignor, Lincoln, had been extinguished in case No. 91-C-1124, Bank Western was bound by such findings, which also extinguished its interest in the property.

On November 12, 1992, the trial court filed a memorandum opinion in the original mortgage foreclosure action (case No. 91-C-1124) granting summary judgment in favor of MidAmerican and against Bank Western. The court held that Bank Western's failure to record its assignment had the effect of nullifying its mortgage. As a consequence, the trial court dismissed Bank Western's counterclaim to foreclose its first mortgage lien. The court concluded that Bank Western had no legal or equitable right in or to the real estate on which it held the first mortgage.

Bank Western appealed the decisions in both 91-C-1124 and 92-C-1185, and the cases were consolidated for appeal. The Court of Appeals in an unpublished decision reversed the decisions of the district courts and remanded for further proceedings, suggesting that the cases be consolidated in the district court.

The Court of Appeals held in case No. 92-C-1185 that the judgment against Lincoln in case No. 91-C-1124 was not binding on Bank Western because the district court in case No. 91-C-1124 had not held Bank Western to be so bound and that, in any event, the district court properly set aside the judgment as to

Bank Western in case No. 91-C-1124 pursuant to K.S.A. 60-309 (default judgment based on publication service may be set aside within two years of judgment if party had no actual notice). Thus, the Court of Appeals held, the district court erred in holding in case No. 92-C-1185 that Bank Western was bound by the default judgment against Lincoln in case No. 91-C-1124.

In case No. 91-C-1124, the Court of Appeals held that Bank Western did not lose the right to foreclose its mortgage lien by failing to record its assignment. The court reasoned that Mid-American, having purchased the property at the sheriff's sale, was not an innocent purchaser. Bank Western's first mortgage had been recorded since 1972, and Bank Western's failure to record the assignment related only to ownership of the mortgage, not to the validity of the mortgage. The court held that the recording of an assignment is not essential to the validity of the underlying instrument. The court pointed to several older Kansas Supreme Court decisions in support of its decision. Thus, according to the Court of Appeals, Bank Western's failure to record its assignment did not render the mortgage null and void, and Bank Western was entitled to foreclose that lien. However, the Court of Appeals did imply that Bank Western's failure to timely record its assignment may influence the priority given to its mortgage and that priority was an issue for the district court upon remand.

This court granted review.

The Court of Appeals relied on a series of older Kansas Supreme Court decisions, many of which were recently cited with approval in *Army Nat'l Bank v. Equity Developers, Inc.*, 245 Kan. 3, 774 P.2d 919 (1989), though the court distinguished the *Army Nat'l Bank* case.

Kansas statutes provide some guidance as to assignments of mortgages, but they do not resolve the issues in this matter. K.S.A. 58-2308 provides for recording the discharge or assignment of a mortgage:

"Every such instrument, and the proof or acknowledgment thereof, shall be recorded at full length by the register of deeds, and a reference shall be made to the book and page containing such record or to the microphotograph number in the general or numerical indexes under the notation that·such mortgage has been assigned or satisfied."

K.S.A. 58-2321 requires an assignee of a mortgage to give the mortgagor credit for payments made to the assignor if the assignment is not recorded:

> "In cases where assignments of real estate mortgages are made after the passage of this act, if such assignments are not recorded, the mortgagor . . . may pay all matured interest or the principal debt itself prior to the recording of such assignment to the mortgagee, or if an assignment of such mortgage has been made that duly appears of record, then such payment may be made to the last assignee whose assignment is recorded in accordance with the provisions of this act . . . ."

These statutes clearly contemplate that assignments of mortgages should be recorded and that the failure to record cannot prejudice the mortgagor. The statutes, however, are silent as to the effect failure to record has on the rights of the assignee in relation to junior mortgagees.

As the Court of Appeals pointed out, this case does not involve an innocent purchaser of property. MidAmerican had notice that there were two prior mortgages of record at the time it took its mortgage in March 1988. The Hendersons revealed the first mortgage in its financial statement given to MidAmerican. It was specifically and conspicuously shown in the "ownership and encumbrance" report provided the bank by a title insurance company and in a credit bureau report. In addition, at the time MidAmerican took the third mortgage, Lincoln, Bank Western's predecessor in interest, in fact held the first and prior mortgage, and this was of record. It was not until after MidAmerican took its mortgage that Lincoln assigned its first and prior mortgage to Bank Western in April 1988. Thus, MidAmerican in no way relied on Bank Western's failure to record its assignment in taking its mortgage third in line.

The general rule is that the first to record a mortgage has priority. The priority continues as long as the mortgage is not released. There is nothing in the statutes or case law which indicates that an assignment of a mortgage or the failure to record that assignment somehow affects the priority of the mortgage. "An assignment of a mortgage is merely a formal transfer of title to the instrument." *Middlekauff v. Bell,* 111 Kan. 206, 207, 207 Pac. 184 (1922).

In *Middlekauff*, Commercial State Bank took a mortgage. A year later, the mortgage was assigned to Middlekauff, but the assignment was not recorded. Three years later, Palmer, who held a mortgage on other property of the debtor, considered taking a mortgage junior to the one of record of Commercial State Bank, and the Bank told Palmer that its mortgage had been paid and would be released. At that time, Commercial State Bank had already assigned its mortgage to Middlekauff. Palmer took its mortgage and later instituted foreclosure proceedings. Neither Commercial State Bank nor Middlekauff, who still had not recorded her assignment, were parties to that action. This court recognized the existence of what is now K.S.A. 58-2223 ("No such instrument in writing shall be valid, except between the parties thereto, and such as have actual notice thereof, until the same shall be deposited with the register of deeds for record."). However, this court stated:

"An assignment of a mortgage is merely a formal transfer of title to the instrument, and the assignment from the bank to the plaintiff [Middlekauff] was admittedly good for that purpose. The plaintiff, however, did not need the assignment in order to invest her with ownership of the mortgage. She acquired full title by purchase of the note which it secured, and the assignment may be excluded from consideration without prejudice to her lien. The mortgage was recorded, was unreleased, and was notice of lien, no matter who owned it; Palmer did not take his mortgage on faith in the record, but in opposition to the record; and instead of the sections referred to determining the controversy in favor of the investment company, another section of the general recording act, providing that recorded instruments, entitled to record, impart notice to subsequent mortgagees (Gen. Stat. 1915, § 2069 [now K.S.A. 58-2222]), determines the controversy in favor of the plaintiff." 111 Kan. at 207.

Significantly, the court further stated:

"One who acquires a negotiable note, secured by recorded mortgage, is not, as to subsequent purchasers or mortgagees, the possessor of a mere 'secret equity,' if no assignment of the mortgage be placed on record. Record of the mortgage is notice of its existence, and the holder is not obliged to disclose his ownership by recording his assignment in order to preserve priority of his lien." 111 Kan. at 212.

As in *Middlekauff*, Bank Western here does not hold a secret equity by virtue of its failure to record its assignment. The underlying mortgage was duly recorded and was effective to give

MidAmerican notice of a superior lien. MidAmerican took its mortgage in opposition to this superior lien. It mattered not who actually owned the first mortgage; it was enough that Mid-American had notice of it.

In *Anthony v. Brennan*, 74 Kan. 707, 87 Pac. 1136 (1906), the assignee of a mortgage sought to establish his ownership. The assignee had obtained a written assignment from only one of the mortgagees and not from the others. However, the note and mortgage were transferable by mere delivery, without a written indorsement. This court held that delivery and possession were sufficient. It was argued that a subsequent act relating to the assignment of mortgages (L. 1899, ch. 168) would change that result. The provisions of that act now substantially appear in K.S.A. 58-2301 *et seq*. This court stated:

"That act does not undertake to limit the methods by which real-estate mortgages may be transferred, and it does not provide that the failure to make a record of an assignment of a mortgage shall invalidate the security or the transfer. It was intended as a protection to mortgagors, and the only penalty prescribed for not recording the transfer is that all payments made by the mortgagor to the mortgagee or to any one who appeared to be the owner shall be credited to the mortgagor, although the assignee never received such payments." 74 Kan. at 709.

As with the Laws of 1899, chapter 168, there is nothing in the current act governing real estate mortgages which limits the methods by which such mortgages can be transferred or which provides a penalty for the failure to record an assignment, except that the assignee must give the mortgagor credit for payments made to the last mortgagee or assignee of record. K.S.A. 58-2321.

In *Exchange State Bank v. Central Trust Co.*, 127 Kan. 239, 273 Pac. 477 (1929), a mortgage was taken on January 2, 1920, and duly recorded on January 16, 1920. Four days after the mortgage was recorded, it was assigned, but the assignee did not record the assignment until 1926. Meanwhile, in 1925 the assignor sought and received a judgment foreclosing the mortgage. After the assignee recorded the assignment, the assignor, who had purchased the property at sheriff's sale, placed the property as collateral for a mortgage with a trust company. The trust company obtained an abstract of title which did not disclose the assignment

of the original mortgage, and the trust company had no actual notice or knowledge of the assignment. Several months later, the assignee discovered the actions its assignor had taken with respect to the mortgage and property. At issue were the rights as between the assignor and the assignee, where the assignor had foreclosed on the mortgage despite not being the owner of the mortgage, and the rights between the assignee and the trust company with respect to the property. This court stated:

"When plaintiff [assignee] discovered what Haas [assignor] had done, it could choose one of two courses of action: It could repudiate the foreclosure proceedings on the ground of fraud, and itself foreclose the Caskey mortgage; or it could confirm the regularity and validity of the foreclosure proceedings as vesting title in Haas [assignor], and hold him as trustee of the title for plaintiff's benefit." 127 Kan. at 242.

The first course of action is supported by *Insurance Co. v. Huntington*, 57 Kan. 744, 48 Pac. 19 (1897). Once the mortgage is assigned, the mortgagee/assignor no longer has any right in the mortgage, and any judgment the mortgagee/assignor obtained would have been fraudulent. The assignee in *Exchange State Bank*, however, chose the latter course, to confirm the foreclosure by the assignor and hold the assignor as trustee. But because the mortgage had been foreclosed and the property sold at the time the assignee recorded the assignment, which the assignee confirmed by his actions, when the assignee recorded the assignment there was no longer a mortgage in existence. The foreclosure was recorded, giving notice that the mortgage was extinguished on April 18, 1925. Thus, the attempted recording of the assignment in 1926 was ineffective as there was no mortgage to be assigned once it had been foreclosed. *Exchange State Bank*, 127 Kan. at 244. This court, therefore, held that the trust company's lien was superior to that of the assignee. 127 Kan. at 245.

MidAmerican contends that *Exchange State Bank* supports its position and that the reasoning is applicable here. However, MidAmerican misinterprets the reasoning of *Exchange State Bank*. The decision there hinged on the assignee's confirmation of the foreclosure by his assignor. This court recognized in the quoted language above that the assignee had two options. Had

the assignee there followed the first course and set aside the judgment of foreclosure, then implicit in the court's decision is that the recordation of the assignment would have been valid and would have protected the priority of the assigned mortgage. It was only because the assignee confirmed the foreclosure by adopting the second alternative course of action that priority and the mortgage itself was lost. The assignee's rights were only lost because, at the time the assignment was recorded, there was no mortgage in existence.

The trial court in case No. 91-C-1124 granted Bank Western's motion to set aside the default judgment as to Bank Western, reasoning that Bank Western had no actual notice of the foreclosure proceedings, that Bank Western acted with reasonable promptness upon learning of the foreclosure proceedings, and that Bank Western's failure to record the assignment did not preclude it from asserting its rights in the property once it learned of the default. The Court of Appeals expanded on the trial court's ruling in case No. 91-C-1124 and held that, in addition to the trial court not having held Bank Western to be bound by the default judgment against Lincoln, K.S.A. 60-309 permits the default judgment to be set aside because service was based on publication. K.S.A. 60-309(a) states:

"A party against whom a judgment has been rendered without other service than publication in a newspaper, may, at any time within two (2) years after the entry of the judgment, have the same opened and be let in to defend. Before the judgment may be opened the applicant shall give notice to the adverse party of his or her intention to make such an application and shall file a full answer to the petition, pay all costs if the court require them to be paid, and make it appear to the satisfaction of the court by affidavit that during the pendency of the action the applicant had no actual notice thereof in time to appear in court and make a defense. The adverse party on the hearing of the application may present counter affidavits."

The trial court found that Bank Western did not have actual notice of the action in time to appear and defend against it.

The trial court properly set aside the default judgment against Bank Western in case No. 91-C-1124. It appears that Lincoln would be entitled to set aside the default judgment upon a timely motion and showing that it had no actual notice of the action.

Because MidAmerican seeks to bind Bank Western as standing in Lincoln's shoes, if Lincoln is entitled to seek to set aside the default judgment, then Bank Western must also be so entitled.

MidAmerican contends that because Bank Western was not named as a defendant, it must first seek to intervene in the action pursuant to K.S.A. 60-224. Yet this position is contrary to the publication notice by MidAmerican, which gave notice to Lincoln and "the unknown heirs, executors, devisees, creditors and assigns of such defendants." Though such language may be mere formality, it recognizes that an unknown assignee of Lincoln may assert its interest. Bank Western's mortgage is derived from the assignment from Lincoln. Lincoln had the right to seek to set aside the judgment and so did Bank Western as Lincoln's assignee. Bank Western's motion to set aside the judgment was timely, and the trial court did not err in granting the motion.

Bank Western has done here what this court in *Exchange State Bank* acknowledged may be done: Bank Western obtained an order setting aside the foreclosure in favor of MidAmerican as a first and prior lienholder. Though the basis here was not fraud, as was recognized in *Exchange State Bank*, the effect is the same.

Once the judgment was set aside, Bank Western was entitled to defend in the action on any legal basis. One of those bases was its assignment of the first mortgage from Lincoln, properly recorded by the time the judgment was set aside.

The trial court, however, granted summary judgment in favor of MidAmerican as against Bank Western's claim to have a first and prior mortgage. The court pointed to two statutes. The first, K.S.A. 58-2222, states:

"Every such instrument in writing, certified and recorded in the manner hereinbefore prescribed, shall from the time of filing the same with the register of deeds for record, impart notice to all persons of the contents thereof; and all subsequent purchasers and mortgagees shall be deemed to purchase with notice."

The second, K.S.A. 58-2223, provides that "[n]o such instrument in writing shall be valid, except between the parties thereto, and such as have actual notice thereof, until the same shall be deposited with the register of deeds for record." The trial court

recognized the rule that an assignee takes no greater interest or rights than his or her assignor has. The court relied upon *Exchange State Bank* and *Army Nat'l Bank* and stated, "recordation of an assignment is necessary to perfect a mortgagee's interest as against other creditors of the mortgagee." The trial court entered summary judgment in favor of MidAmerican.

Both MidAmerican and the trial court relied on *Army Nat'l Bank*, 245 Kan. 3. That case does not provide much assistance in this case because it was governed by the Uniform Commercial Code and was not a pure mortgage foreclosure action.

In *Army Nat'l Bank*, Equity Developers had executed nine construction notes secured by mortgages to Equibank Corporation in 1984. Equibank then executed a note in favor of what became the Bank of Kansas City (BOKC), listing the nine notes from Equity Developers as security. Equibank endorsed the notes and assigned the mortgages to BOKC on November 16, 1984, but BOKC did not record the assignment until February 12, 1986. Equibank then entered into an agreement with Army National Bank on May 20, 1985, to subordinate its interest in the notes and mortgages to Army.

Army claimed an interest in the notes and mortgages. At issue was the priority between BOKC and Army. This court concluded that the priority was governed by the Uniform Commercial Code based on when the security interest in the notes was perfected. This court observed that K.S.A. 1988 Supp. 84-9-304(1) requires that a security interest in instruments can only be perfected by possession. 245 Kan. at 13. BOKC had taken possession of the notes, though it did not record its assignment until more than one year later.

This court noted that it had not in recent years addressed whether an assignment of a mortgage must be recorded. We discussed *Anthony*, 74 Kan. 707, and *Middlekauff*, 111 Kan. 206, and stated: "[F]ailure to record an assignment of a mortgage is only a fatal error where it has prejudiced the rights of the mortgagor." *Army Nat'l Bank*, 245 Kan. at 17. We then held that the "the mortgage follows the note. A perfected claim to the note is equally perfected as to the mortgage." 245 Kan. at 17. This court

determined that BOKC had priority because Army had failed to take possession of the notes, though Army had no notice of the assignment when it entered into its subordination agreement with Equibank. 245 Kan. at 20. This court further held that when Equibank subordinated its interest to Army, it actually had no interest to subordinate. 245 Kan. at 22.

It is evident that *Army Nat'l Bank* involved unique facts and circumstances. Most significant, the priority dispute between BOKC and Army involved Army's purported interest in the same notes of which BOKC had possession. Further, the case involved the validity of a subordination agreement Army entered into with Equibank after Equibank had assigned the notes to BOKC.

The trial court here pointed to the following language in *Army Nat'l Bank*, 245 Kan. at 19: "We reason that the mortgagee's creditor would be perfected by possession as to other creditors of the mortgagee, but would be required to record its interest in order to be perfected as to creditors of the mortgagor." The trial court held this rule to be dispositive, but we find that this isolated quote from *Army Nat'l Bank* is not controlling. First, *Army Nat'l Bank*, as noted by the Court of Appeals, did not involve strictly mortgage foreclosure actions. Further, we do not have here a creditor of a mortgagee competing with a creditor of the mortgagor as was the case in *Army Nat'l Bank*. Rather, we are only balancing the interests of two creditors of the mortgagor.

In any event, the *Army Nat'l Bank* quote is not inconsistent with the holding of the Court of Appeals. MidAmerican asserts that the quote signifies the need for one creditor of the mortgagor to record in order to retain priority over other creditors of the mortgagor. What this argument ignores is that the first mortgage here was already properly recorded. It was only the assignment which was not recorded. As discussed above, nothing in the statutes or case law requires that the assignment of a prior mortgage be recorded in order to maintain priority status over the junior mortgagees. Thus, when the original first mortgage was properly recorded here, it was effective, and the priority established thereby was not divested by Bank Western's failure to record its assignment.

MidAmerican had notice that there were two prior duly recorded mortgages at the time it took its third mortgage. Bank Western's failure to record its assignment did not induce MidAmerican into taking its mortgage; in fact, the assignment from Lincoln to Bank Western did not occur until after MidAmerican took its third mortgage. MidAmerican was not prejudiced by Bank Western's failure to record its assignment. The first mortgage, whoever owned it, was unreleased of record at the time MidAmerican instituted its foreclosure action. MidAmerican knew when it instituted its foreclosure action that its mortgage was inferior to the prior mortgages. The judgment MidAmerican obtained was properly set aside, and MidAmerican was aware that, having obtained judgment by default against American General and Lincoln, it was subject to having its judgment set aside. The fact that Bank Western, as Lincoln's assignee, is now the party defending the action as to the first mortgage in no way puts MidAmerican in a worse position than if Lincoln had not assigned its mortgage and Lincoln were defending the action as to the first mortgage.

The Court of Appeals decision reversing the judgment of the district court is affirmed. The decision of the district court is reversed.