BUSH, RECEIVER ST. LOUIS, IRON MOUNTAIN & SOUTHERN
RAILWAY COMPANY, v. STEPHENS.

Opinion delivered July 9, 1917.

1. RES JUDICATA—OVERFLOW OF LAND—FORMER ACTION—ESTOPPEL.—
In a former action plaintiff recovered damages by reason of the
overflow of her land, caused by the construction of an embank-
ment by defendant railway company. In a second action for dam-
ages caused by a continuation of the overflow, *held*, the court
properly instructed a verdict for the plaintiff. Where the second
action is based upon the same facts as the first, the defendant is
estopped to deny the existence or character of the nuisance or the
plaintiff's right to recover, and the plaintiff need prove only that
the nuisance remains in the same condition as before, or in a
more or less damaging condition. The rule is not altered in this
case because the defendant had made some changes in the char-
acter of its trestle and embankment, causing the overflow.

2. RECEIVERS—TORT OF CORPORATION BEFORE APPOINTMENT.—A re-
ceiver is not liable for a tort committed by a corporation prior to
his appointment.

Appeal from Craighead Circuit Court, Jonesboro
District; *W. J. Driver*, Judge; modified and affirmed.

*Troy Pace* and *Gordon Frierson*, for appellant.

1. The court erred in instructing the jury to find for
the plaintiff. The embankment was permanent. It was
constructed more than thirty-two years ago. This suit is
therefore brought on the theory of a continuing or recur-
ring tort. The original case is reported in 72 Ark. 127.
Cases of this character are in principle based upon the
question of negligence in *maintenance,* and the cause of
action arises not upon the construction of the embank-
ment but upon the occurrence of the damage. The ques-
tion of the existence of identical conditions at the time of
the former suit and the later one is of the very essence,
and the rule as to *res judicata* is therefore necessarily
different. 23 Cyc. 1188. The burden was on plaintiff to
"show the continuance of the same conditions." See 94
U. S. 606; Black on Judgments, 951, § 624; 55 Ark. 292;
66 *Id*. 344; 108 *Id*. 574-8; Black on Judgments, 940,
936, etc.

2. The court erred in refusing to give instruction No. 1, asked by defendant. The suit is barred by limitation. 62 Ark. 360; 35 *Id.* 622; 86 *Id.* 406.

*Basil Baker* and *Horace Sloan,* for appellee.

1. There is no estoppel by former judgment. 2 Black on Judgments, § 742, p. 1118. This was a continuing trespass or tort.

2. The suit is not barred. 72 Ark. 127. The wrong is a continuing one. 52 *Id.* 240; 56 *Id.* 612; 57 *Id.* 387; 72 *Id.* 127; 66 *Id.* 271; 76 *Id.* 542; 80 *Id.* 235; 82 *Id.* 387, 392.

3. The court erred in striking out of the complaint against the receiver all items of damage alleged to have accrued prior to the time of his appointment. 4 Fed. Stat. Am. 387, § 3; 22 S. W. 50; 38 Atl. 690.

WOOD, J. These suits were instituted to recover damages alleged to have been suffered by the plaintiff during the years 1913, 1914, and 1915 because of overflow of lands of plaintiff.

It was alleged that an opening in the railroad embankment a quarter of a mile north of plaintiff's land was inadequate to allow the passage, under the railroad tracks, of water which naturally accumulated at that point, with the result that such surplus quantity of water was deflected and caused to run southward along the west bank of the railroad to a point where it overflowed into another water course, thereby swelling the volume of water in such second watercourse; that in the original construction of the railroad embankment, the channel of this second watercouse was changed so as to cause an abrupt curve in the same, which caused the water to pour out over the east bank of the channel and thereby overflow plaintiff's land, causing damage by reason of the destruction of her crops in the years 1913, 1914 and 1915 in the aggregate sum of $969.50, and by making ditches, holes and gulleys therein and washing off the top soil, to her damage in the sum of $1,800.00. Wherefore, she prayed judgment for the sum of $2,769.50.

A suit was filed against the railway company, and also one against the receiver, the complaints contained the same allegations with the exceptions of the allegations concerning the receivership.

The answers denied all the material allegations of the complaints as to negligence. The cases were consolidated and tried together. The jury returned a verdict assessing amounts of damages accruing for the years 1913, 1914 and 1915.

Appellant concedes in its abstract that there was ample evidence upon which the jury might have found either for the plaintiff or the defendant upon the sole question as to whether or not the overflow of plaintiff's property was caused by the negligence of the defendant at a point where the second or southern watercourse passes under the railroad track.

There was no evidence introduced on the trial concerning the condition or capacity of the northern channel, that is, the channel which it is alleged in plaintiff's complaint was diverted through the negligence of the company into the southern channel.

At the close of the evidence the plaintiff's attorney offered in evidence the pleadings and judgment in a case between the plaintiff and the defendant railway company which was tried in 1913. The appellants objected, whereupon the following stipulation of counsel was entered into: "It is hereby stipulated by and between the respective attorneys for the parties hereto, that since the trial in 1913, pleadings and judgment in which suit have been admitted in evidence, that the trestle mentioned in the complaint as a quarter of a mile north of plaintiff's land has been altered and changed in the following respects, towit: By the construction of an addition thereto, consisting of a two-panel trestle or bridge, with a waterway area of seventy-two square feet."

The court directed the jury to return a verdict in favor of the plaintiff, on the ground of *res adjudicata,* and this raises the first question for our consideration.

While the appellee alleges in both the suit of 1913 and in the present suit that about a quarter of a mile north of her land there was a natural channel or watercourse sufficient in size to carry all the water naturally accumulating therein, which the appellant had obstructed and filled up by not leaving a sufficient opening in its embankment across said stream to allow the water to pass through, thereby diverting the same into another and larger channel about two hundred yards west of appellee's land, she also alleges in these complaints that this second channel was sufficient to carry off all the water which naturally accumulated therein, but that appellant, by the negligent and careless construction of its railway over this channel, so changed the watercourse as to make an abrupt curve therein, which curve caused the water therein, when it was high, to overflow appellant's land, which resulted in her damage, and for which she sued.

The allegations show that the gravamen of appellee's charge in both complaints is that appellant, by the negligent construction of its railroad made an abrupt change or curve in a watercourse which ran about two hundred yards from her land, which abrupt curve and change resulted in her damage. The allegations plainly show that but for this change in the watercourse near her land she would not have been damaged. In other words, the proximate cause of her damage, as shown by the pleadings in both lawsuits, was the negligent construction of the railroad over the watercourse near her land, which changed its course and caused the land to overflow.

Now the appellants contend that the plea of *res adjudicata* can not avail because, while the allegations of negligence in the two lawsuits remain the same, the conditions on the last lawsuit were not the same as they were on the first trial, because of the fact, as shown by the stipulation, that since the trial in 1913 the trestle mentioned in the complaint as being a quarter of a mile north of appellee's land had been changed by the addition thereto of a two-panel trestle or bridge with a waterway area of seventy-two square feet. We must take it from

the statement in appellant's abstract, and its failure to set forth the evidence in favor of the appellee on the issue of negligence, that the testimony was ample to show that, notwithstanding the above change in the trestle a quarter of a mile north of appellee's land, the undisputed evidence showed that the lands of appellee still overflowed as they did before this change. Therefore, we must assume that the court, in directing the jury to return a verdict, found that the undisputed evidence showed that the conditions, so far as they affected appellee's cause of action and right to recover damages on account of appellant's negligence, were the same on the trial of the last lawsuit as they were in the first.

If the change by the enlargement of the upper trestle did not prevent or tend to prevent the overflow and damage to appellee's land, caused by the negligent construction of the embankment over the watercourse near her land, and if this curve or change in the watercourse two hundred yards west of appellee's land, caused by the negligence of appellant, would necessarily result in damage to her, notwithstanding the change in the upper trestle, then there was no change in the conditions as to the negligence which was the proximate cause of her damage, between the first lawsuit and the last. In other words, the existing conditions of negligence which were the proximate cause of her injury were shown to be the same in the last lawsuit as they were in the first. This is the test.

(1)   Mr. Black, in his work on judgments, announces the correct doctrine when he says (volume 2, section 742): "According to the generally accepted doctrine, in an action for the continuance of a trespass or nuisance, a former proceeding upon the same cause of action and between the same parties, or those under whom they claim, wherein judgment was recovered by the plaintiff, is conclusive of the rights of the parties; the defendant is estopped to deny the existence or character of the nuisance or the plaintiff's right to recover, and the latter need only prove that the nuisance remains in the same condition as before, or in a more or less damaging condition."

And at page 936, section 614, he says: "The doctrine of *res judicata* does not rest upon the fact that a particular proposition has been affirmed and denied in the pleadings, but upon the fact that it has been fully and fairly investigated and tried—that the parties have had an adequate opportunity to say and prove all that they can in relation to it, that the minds of court and jury have been brought to bear upon it, and so it has been solemnly and finally adjudicated. * * * For these reasons, the more correct doctrine is that the estoppel covers the point which was actually litigated, and which actually determined the verdict or finding, whether it was statedly and technically in issue or not."

Appellee obtained judgments in former suits on complaints alleging precisely the same grounds of negligence as alleged in the complaint in the present suit, and before there was any enlargement of the trestle of the upper stream. In the present suit, although it was shown that there was an addition to the trestle, enlarging the same, nevertheless the proof on the part of the appellee showed that this change or enlargement of such trestle did not lessen or prevent or affect in any manner the overflow caused by the negligence of appellant in so constructing its railway as to cause a sudden curve and changing of the course of the stream (Breedlove creek) near her land. In other words, the undisputed evidence showed that appellee's land was overflowed after the enlargement of the upper trestle, the same as it was before, showing that the change made in the upper trestle did not change the conditions caused through the negligence of appellant in changing the course of the stream near her land that caused it to be overflowed.

It is stated in the brief of counsel for appellee that the same witnesses testified who testified in the former case, the same map that was used by the railway company in the former suit was offered in evidence, that the witnesses gave the same testimony that they did on the former hearing. These statements are not challenged, and no testimony is set forth controverting the state-

ments. The stipulation did not change the conditions caused by the acts of negligence upon which appellee's cause of action was predicated. The cause of action in the former and in the present suit was identical.

In *Edwards* v. *Wallace,* 108 Ark. 574, 578, we said: "The estoppel resulting from the thing adjudged does not depend upon whether there is the same demand in both cases, but exists even although there be different demands, where the question upon which the recovery of the second demand depends has, under identical circumstances and conditions, been previously concluded by a judgment between the parties or their privies."

It follows that the court was correct in holding that the doctrine of *res judicata* applied in favor of the appellee, under the facts of this record, and did not err in directing a verdict in her favor.

(II)    The court erred in striking from the complaint against the receiver all items of damage alleged to have occurred to appellee prior to his appointment on August 19, 1915. Appellee alleged in her complaint against the receiver that he was appointed as such of the St. Louis, Iron Mountain & Southern Railway Company on August 19, 1915; that in the order appointing said receiver the following language was used: "That said receiver be and he is hereby authorized and empowered to institute and prosecute within this State or elsewhere, and in his own name as receiver, or in the name of the defendant railway company, as he may be advised by counsel, all such suits as in his judgment may be necessary for the recovery or proper protection of said property, or any part thereof, and the discharge of his trust, and likewise to defend, compromise or settle any and all actions which may be instituted against him as receiver, and to appear in and conduct the prosecution or defense of, or compromise or settle, any and all actions which may be instituted against him as receiver, and to appear in and conduct the prosecution or defense of, or compromise or settle, any actions, proceedings or suits now pending or which may hereafter be brought in any court or before any

officer, department, commission or tribunal in which the defendant railway company is or shall be a party, which in the judgment of said receiver, affect or may affect the property of which he is hereby appointed receiver; but except upon further order or directions of this court, no payment shall be made by said receiver in respect of any such suits, actions or proceedings and no action taken by the receiver in the defense or settlement of any such actions or suits against the defendant railway company shall have the effect of establishing any claim upon or right in any property or funds in the possession of the receiver so as to alter or change any existing equities or legal rights of the parties.''

In the recent case of *Bush, Receiver,* v. *State,* 128 Ark. 448, quoting from *Jordan* v. *Harris,* 98 Ark. 200, we said: '' 'The receiver of an insolvent corporation stands in the place of the corporation and has only such rights as it had, so that the rights of third parties are not increased, diminished or varied by his appointment.' So here the receiver stood in the place of the corporation owning the railroad.''

The broad power and leave conferred upon the receiver by the order of the Federal court appointing him implies a consent upon the part of such court in advance that he may be sued for acts of the railroad company prior to his appointment. This leave for him to be sued for acts of the company prior to his appointment is plainly to be inferred from the language of the order making the appointment. Therefore, if consent was necessary it was granted in advance. The court therefore erred in striking from the complaint against the receiver the damages that accrued to appellee prior to August 19, 1915.

The judgment in favor of the appellee against the railway company will be affirmed. And the judgment in favor of the appellee against the receiver will be amended and judgment rendered here in her favor against the receiver for the damages that accrued to her as returned by the verdict of the jury for the years 1913 and 1914, as well as for the year 1915. With this amendment the

judgment in favor of the appellee against the receiver will be in all respects affirmed.

McCULLOCH, C. J., (on rehearing). (2) The conclusion is reached by the majority of the judges that we were in error in holding that the plaintiff was entitled to a judgment against the receiver of a railway company for recovery of damages arising from a tort committed by the railway company before the appointment of the receiver. Such is not the law according to the great weight of authority. There are some cases holding to that view, but the weight of the authority is the other way. See note to *Emory* v. *Faith,* 22 Am. & Eng. Ann. Cas., page 586. "It is settled, we think," said the Maryland court in the case just cited, "by all the well considered authorities, that an action at law for personal injuries sustained by the alleged negligence of a corporation, prior to the appointment of a receiver, can not be maintained against the receiver subsequently appointed. In other words, a receiver is not liable for a tort committed by a corporation prior to his appointment." That is the rule stated by Mr. High in his work on Receivers, section 397, where the rule is stated as follows:

"But since a receiver of a railway is not liable to an action for injuries sustained before his appointment and while the road was operated by the company, leave of court will not be granted to bring such action, and the person aggrieved will be left to pursue his remedy against the company."

In the case of *Decker* v. *Gardner, Receiver,* decided by the New York Court of Appeals, 124 N. Y. 340, 11 L. R. A. 480, the court said: "He did not represent the corporation, or supersede it in the exercise of its powers, except in relation to the possession and management of the property committed to his charge. Notwithstanding his appointment, the corporation was clothed with its franchises, and still existed. It could still exercise its power, so it did not interfere with the management of the

railroad. It could do many corporate acts, and it could do all things necessary to preserve its legal existence. It could sue and be sued, and was liable for its acts and upon its contracts and covenants the same as if the receiver had not been appointed." To the same effect see *North-ern Pac. Ry. Co.* v. *Heflin,* 83 Fed. 93. This court recognized that principle in *Ratcliff* v. *Adler,* 71 Ark. 269, but held that a receiver could be sued for damages for the taking of land for right-of-way where it was shown that he continued the wrongful possession of lands originally appropriated by the railway company before the appointment of the receiver. The principle was also recognized by this court in the more recent case of *St. L. & S. F. Rd. Co.* v. *Coy,* 113 Ark. 265, where we held that after the appointment of a receiver an action could be prosecuted against a railway company on a cause of action which arose before such appointment.

The order of the court which appointed the receiver is not, and could not, be broader than the law itself, and does not attempt to create liability on the part of the receiver where none exists under the law. The order merely contains consent on the part of the court to the maintenance of a suit against a receiver in cases where liability of the receiver is asserted, but does not attempt to create liability on the part of the receiver, and does not authorize suit against him in cases where the corporation itself only was liable. There is, it is true, an authority conferred upon the receiver to defend suits brought against the company, but this was not intended to authorize a suit to be brought against the receiver in cases where no liability on his part exists. The purpose of the order was to permit the receiver to defend for the railroad corporation so that the rights of the company could be safeguarded. But that court possessed exclusive jurisdiction over the distribution of the assets of the corporation and an adjudication of another court concerning liability of the corporation itself would not be binding on the court in which the receivership is pending as to the right of the judgment creditor to participate in the assets in the hands

of the receiver, as would be the case where judgment was obtained against the receiver in a suit brought against him by permission of the court on his own liability.

The receiver has not intervened in this case for the purpose of defending the suit against the railroad company, and the fact that he was given authority to do so by the court that appointed him afforded no justification for suing him for a tort committed by the railroad corporation before his appointment. A rehearing is, therefore, granted as to this branch of the case, as well as to the other branch in which the receiver is sued for the tort committed by his servants and employees.

WOOD, J., (dissenting). Mr. Justice HART and I have no quarrel with the authorities cited by the majority in their opinion on the rehearing. These authorities are sound and applicable to the usual and ordinary orders made by courts appointing receivers to take charge of the assets of insolvent corporations, but they have no application to the order under which the present receiver was appointed and acting. We are of the opinion that the peculiar and broad language of this order was sufficient to authorize the receiver to be made a party to suits to establish liability of the corporation for injuries accruing prior to his appointment as well as those that accrued after his appointment. We know of no statute nor any rule of the common law that prohibits a court, when it takes charge of the assets of an insolvent corporation, to conserve and administer same for the benefit of the corporation and the creditors thereof and all concerned therein, to make an order as broad as the one here under review. We can see that such an order would serve a wise and useful purpose in preventing confusion and enabling the court, having charge of the assets and the administration thereof, to dispose of all matters in which the property of the corporation is in any wise affected. The language of the order when taken as a whole plainly shows that it was not the intention that liability should be fixed against the receiver as such for acts of the corporation causing injury prior to his appointment.

The order was doubtless intended by the court to provide a convenient, simple and easy method of establishing claims and settling all controversies in which the assets of the corporation in the hands of the receiver might be in any manner affected.

We are, therefore, still of the opinion that the court erred in striking from the complaint all items of damage alleged to have accrued to appellee prior to the appointment of the receiver.

HART, J., concurs in the dissent.