(50 P.3d 517)

No. 87,560

PREMIER BANK, A KANSAS BANKING CORPORATION, *Plaintiff/Appellee*, v. J. D. HOMES OF OLATHE, INC., *et al., Defendants*, and RAINTREE HOMES ASSOCIATION, INC., *Defendant/Appellant.*

Opinion filed July 26, 2002.

*John Anderson, Jr.,* of Leawood, for appellant.

*O. P. Peterson, Jr.,* and *Joanne B. Stutz,* of Evans & Mullinix, P.A., of Shawnee, for appellee.

Before MARQUARDT, P.J., ELLIOTT and GERNON, JJ.

GERNON, J.: Raintree Homes Association, Inc., (Raintree) appeals the decision of the district court in a mortgage foreclosure case concerning real property on which a nuisance had been found to exist. We affirm.

In December 1999, Raintree, a not-for-profit home association in Olathe, Kansas, filed a petition against J. D. Homes, Inc., (J. D. Homes) and Premier Bank (Premier), alleging, *inter alia*, that a nuisance had been created on building sites owned by Raintree in Olathe. J. D. Homes was involved in building and improving residential lots on the site. Premier provided the mortgages on the lots.

The nuisance claimed by Raintree consisted of trash, dirt, rock, and lumber scattered throughout the property that allegedly affected the enjoyment and ownership of the Raintree Condominiums by their owners. Raintree sought $11,973.50 in damages.

J. D. Homes admitted to creating the nuisance on Raintree's property. The trial court found that J. D. Homes created and maintained a nuisance on the property, ordered that it be abated, and granted a judgment for $11,973.50.

In January 2000, Premier filed a mortgage foreclosure action on the Olathe property. The case was filed in Johnson County, as was the nuisance action. The foreclosure petition alleged that J. D. Homes had failed and refused to pay the outstanding loan principal and accrued interest on the property. The court appointed a receiver to prevent a further nuisance on the property and to manage it.

Premier filed a motion for summary judgment in its foreclosure action. Raintree countered with a motion to stay summary judgment and to compel abatement of the adjudicated nuisance.

The court granted Premier's motion for summary judgment and entered judgment against J. D. Homes for $267,908.46 plus interest. After a sheriff's sale, the court determined that Premier had a first and prior lien over the sale proceeds. Raintree appeals.

## PRIORITY

Raintree argues that the judgment for street repairs stemming from the damage caused by the nuisance is prior in right to Premier's mortgage. Premier counters that the trial court properly exercised the discretion it had to determine the priority of the distribution of the proceeds from the sale.

*McFall v. Ford,* 133 Kan. 593, 1 P.2d 273 (1931), concerns a very similar situation. A bank in Wichita filed three actions to foreclose on three tracts of land owned by the mortgagor, M. C. Combs. A judgment was entered for the bank and against Combs in each case. On the same day as that judgment was entered, Katie Thomas was awarded a personal judgment against Combs and a judgment for foreclosure. Later, some of the land involved in the bank's case was sold, with none of Thomas' judgment having been satisfied.

According to the court, when two of the foreclosure lawsuits were filed, Thomas had no lien on those tracts. However, when Thomas won a judgment of foreclosure on one of the tracts, her judgment became a lien on the other tracts. As support for the last contention, the court cited R.S. 1923, 60-3126, which stated: "Judgments of courts of record of this state, and of courts of the United States rendered within this state, shall be liens on the real estate of the debtor within the county in which the judgment is rendered." The court decided Thomas' lien "originated in her judgment, and the [bank's] liens were necessarily superior to the lien which [Thomas] acquired." 133 Kan. at 595.

The modern version of the statute cited in *McFall* is K.S.A. 2001 Supp. 60-2202(a):

"Any judgment rendered in this state by a court of the United States or by a district court of this state in an action commenced under chapter 60 of the Kansas Statutes Annotated shall be a lien on the real estate of the judgment debtor within the county in which judgment is rendered. Except as provided in subsection (c), the lien shall be effective from the time at which the petition stating the claim against the judgment debtor was filed but not to exceed four months prior to the entry of the judgment."

Statutory interpretation is a question of law, and this court's review is unlimited. See *Babe Houser Motor Co. v. Tetreault,* 270 Kan. 502, 506, 14 P.3d 1149 (2000).

Pursuant to 60-2202(a), the judgment against J. D. Homes for the nuisance was a lien on J. D. Homes' real estate located in Johnson County. Raintree's petition was filed on December 7, 1999, and the judgment was entered on June 29, 2000. Raintree's

lien was, therefore, effective on February 29, 2000. Premier's lien was effective on July 24, 1997, the day the mortgage was recorded.

The trial court was correct in finding that Premier's lien had priority.

## TRANSFERRED LIABILITY

Raintree claims that Premier became a transferee of the property when it filed a foreclosure action on the property and a receiver was appointed to manage the property. Premier asserts that it never held title to the Olathe property and any responsibility to abate the nuisance was with the new owner, A & H Properties, and not with Premier. A & H Properties purchased the property on March 30, 2001.

Raintree's first argument is that Premier is liable for the abatement because Premier filed a foreclosure action on the property. Although this issue is one of first impression in Kansas, the legal theory behind it can be analogized to the lien theory/title theory of mortgage law.

Kansas is a lien theory state, not a title theory state. "In a 'title theory' jurisdiction . . . the mortgage is viewed as a form of title to property. [Citation omitted.] In lien theory states, a mortgagee is not entitled to immediate possession of the property upon default because the mortgage is merely a lien and not a form of title. [Citations omitted.]" *Hoelting Enterprises v. Trailridge Investors, L.P.*, 17 Kan. App. 2d 777, 783, 844 P.2d 745, *rev. denied* 252 Kan. 1092 (1993).

Under Kansas law, a mortgagee does not acquire an interest in the property, either before or after the promise to pay is broken, " ' "but acquires only a lien securing the indebtedness described in the instrument." ' [Citations omitted.]" 17 Kan. App. 2d at 783.

Premier, as the mortgagee, only had a lien on the property and was not entitled to possess the property. Since Premier could not possess the property upon filing a foreclosure action, it logically follows that it should not be liable for nuisance abatement on that property. The filing of the foreclosure action by Premier was an acceptable exercise of its rights under the mortgage. If the law were as Raintree suggests, no mortgagee would ever foreclose on a piece

of property for fear it would be liable for judgments on the property.

Premier did not become liable for the nuisance abatement simply by filing a foreclosure action against Raintree. If that were the case, mortgage lending would carry a potentially heavy price for the lending institution. Such a decision would have a chilling effect on mortgage lending in this state. In addition, assessing liability against Premier would run counter to the notion that Kansas is a lien theory state.

Raintree's second argument that Premier is liable for the abatement because a receiver was appointed to manage the property also fails.

Pursuant to K.S.A. 60-1301, a district judge has the authority to appoint a receiver, and the receiver's duty "shall be to keep, preserve, and manage all property and protect any business or business interest entrusted to the receiver" pending the determination of the case.

Here, a receiver was appointed by the court in January 2000. The duties of the receiver included:

"1. . . . (i) manag[ing] said real estate and [taking] whatever actions are necessary to protect, preserve and prevent the same from further waste, damage or destruction; (ii) [taking] any action necessary to complete construction of the improvements if it is deemed to be in the best interest of [Premier]; (iii) collect[ing] all income, rents and profits; and (iv) [having] the net proceeds derived from the collection of all income, rents and profits applied to the indebtedness of [J. D. Homes] owed to [Premier].

"2. That this receivership shall continue until further Order of this Court.

"3. That the receiver shall submit a final accounting of its receipts and disbursements upon termination of the receivership."

"A receivership does not operate to alter, modify, or terminate obligations and liabilities of the corporation or person in receivership." 65 Am. Jur. 2d, Receivers § 284, p. 867. The issue of whether a receiver is liable for a nuisance created before the receiver was appointed is one of first impression in Kansas. As such, the law of sister states will need to be considered.

In *Bartlett v. Cicero Light Co.*, 177 Ill. 68, 52 N.E. 339 (1898), a receiver was appointed for Cicero Light, Heat and Power Com-

pany (Cicero). Two months later, and still during the receiver's appointment, a young man was killed while working at Cicero. The machinery which killed the man was negligently installed prior to Cicero being placed in receivership. The man's father filed an action to recover for the death of his son. The father sued Cicero, claiming, *inter alia*, the receiver negligently managed the machinery his son came into contact with, thereby causing his death At the time the suit was filed, the receiver had been discharged by a stipulation of the parties.

The Supreme Court of Illinois identified the issue in the case as whether Cicero could be liable for damages that occurred during the course of the receivership. 177 Ill. at 73. The court held that "a judgment, rendered while the receiver is in possession, should provide for its payment out of the trust fund or the property in the hands of the receiver or under his control." 177 Ill. at 76. Since the receiver had been discharged, however, Cicero itself was liable. 177 Ill. at 76.

Raintree's case differs from *Bartlett*, though, in an important respect. The receiver did not cause the damages Raintree wants Premier to pay for; J. D. Homes admitted to causing the nuisance before the receiver was appointed.

In *Bush, Recr., v. Stephens*, 131 Ark. 133, 197 S.W. 1157 (1917), Stephens sued a railroad company and its receiver, Bush, for negligent construction of a railroad over a water source. The trial court did not allow a judgment against Bush for damages arising from a tort committed by the railroad company before Bush was appointed.

On appeal, the Arkansas Supreme Court originally ruled that Bush could be sued by Stephens because as a receiver, Bush stood in the shoes of the corporation for litigation purposes. 131 Ark. at 140. On a rehearing, however, the court reversed itself, ruling it was in error when it held that Stephens was entitled to a judgment against Bush. 131 Ark. at 141. The court cited cases from Maryland, New York, and Arkansas in reaching its decision. 131 Ark. at 141-42.

The gravamen of the court's decision was that a receiver cannot be liable for torts committed prior to his or her appointment. 131

Ark. at 141. An action for negligence brought against a receiver for actions that happened prior to his or her appointment cannot be sustained. 131 Ark. at 141. The corporation for which the receiver is appointed is still responsible for its actions, contracts, and covenants, much as if the receiver did not exist. 131 Ark. at 142.

Here, a receiver was appointed, and Raintree seeks to have Premier held responsible for abating a nuisance that existed prior to the receiver's appointment. Under the persuasive precedent of *Bush*, such an argument must fail. Premier was not responsible for the abatement of the nuisance; therefore, no liability should attach. The trial court was correct.

We have considered appellee's motion for attorney fees and deny the motion.

Affirmed.