NOT DESIGNATED FOR PUBLICATION

No. 117,707

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

PHILLIP L. TURNER,
d/b/a TURNER & TURNER,
*Appellant*,

v.

RICH HAYSE,
*Appellee*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; EVELYN Z. WILSON, judge. Opinion filed July 6, 2018.
Affirmed.

*Phillip L. Turner*, appellant pro se.

*J. Steven Pigg*, of Fisher, Patterson, Sayler & Smith, L.L.P., of Topeka, for appellee.

Before ATCHESON, P.J., PIERRON and STANDRIDGE, JJ.

PER CURIAM: This legal malpractice case turns on a basic concept: An in rem judgment is and always will be an in rem judgment and no amount of legal prestidigitation can later turn it into an in personam judgment. Attempting such a magic trick would, at the very least, disregard due process principles, so the effort should never meet with success. Rich Hayse, therefore, could not have committed malpractice by declining to press an appellate argument dependent upon completing that law-defying stunt. Recognizing that concept, the Shawnee County District Court properly entered summary judgment for Hayse and against Phillip L. Turner. We affirm.

1

This malpractice action arises out of the protracted efforts of Turner, himself a lawyer, to collect fees from a recalcitrant former client. Most of that history has no bearing on the dispositive legal issue before us. We offer a staccato rendition of the legally significant passages.

• Turner and his law firm did work for Larry Steele, other members of the Steele family, and affiliated businesses. Turner didn't get paid in full, so he sued his former clients in Shawnee County District Court in April 1999 and obtained a default judgment for more than $600,000. The judgment was an in personam money judgment against the named defendants. On June 26, 2000, Turner registered the judgment in Greeley County, where Steele owned a substantial amount of land. The judgment then became a lien on that real property.

• Long before the dustup with Turner, Steele had used the Greeley County land as collateral for a loan. Relevant here, John Hancock Mutual Life Insurance Company held the promissory note and mortgage. Steele apparently defaulted on the note. Based on diversity jurisdiction, John Hancock filed a mortgage foreclosure action against the Greeley County real property in the United States District Court for the District of Kansas in October 1999. The action named persons and entities potentially holding interests in the real property but never included Turner. John Hancock obtained a default judgment of foreclosure on May 31, 2001, and registered the judgment in Greeley County about two weeks later. The federal in rem judgment specifically affected the real property in Greeley County, along with other land not directly relevant here that had been pledged for other defaulted loans.

• On September 6, 2001, the Greeley County District Court entered an order directing the county sheriff to sell Steele's real estate based on John Hancock's in rem foreclosure judgment. The sheriff sold the land in early 2002, and the Greeley County District Court confirmed the sale two months later.

• Turner twice renewed his in personam judgment against Steele. In the meantime, First Tribune Insurance Agency, Inc. and Western Plains Funds, Inc. acquired the Greeley County real property Steele had owned.

• In May 2010, First Tribune filed a quiet title action in Greeley County District Court regarding the Steele land and named Turner as an interested party. First Tribune essentially sought a judicial determination that Turner's in personam judgment against Steele no longer impressed a lien on the land. A month earlier, Turner had obtained an order of execution on the land from the Shawnee County District Court. This court later reversed the order of execution. See *Turner v. Steele*, 47 Kan. App. 2d 976, 993, 282 P.3d 632 (2012).

• Turner represented himself in the quiet title action in the Greeley County District Court. The district court ultimately entered an order quieting title to what had been the Steele land in First Tribune and rejecting all of Turner's arguments as to why his judgment remained a valid lien on the land. Turner posed the argument that has become the focus of this malpractice action. He asserted that when John Hancock registered the in rem foreclosure judgment from the federal district court under the Uniform Enforcement of Foreign Judgments Act, K.S.A. 60-3001 et seq., it became an in personam judgment and thus, in legal import and effect, a general money judgment against Steele. And as the argument goes, that "transformed" general money judgment was junior to Turner's in personam judgment that had been registered in Greeley County almost a year earlier.

• Turner hired Hayse to handle the appeal in the quiet title action. This court affirmed the district court decision adverse to Turner. See *First Tribune Ins. Agency, Inc. v. Turner*, No. 108,188, 2014 WL 2401398, at *13 (Kan. App. 2014) (unpublished opinion). Hayse raised a host of arguments in the appeal. He considered and chose not to brief Turner's argument that the federal in rem judgment became a general in personam judgment upon registration in the Greeley County District Court and, therefore, was junior to Turner's judgment against Steele.

• Turner then sued Hayse for legal malpractice in Shawnee County District Court on the theory that Hayse negligently abandoned the argument that registration of the in rem foreclosure judgment changed it into a general in personam judgment and that the argument would have been a winner on appeal. Hayse filed a motion for summary judgment. In a detailed written ruling, the district court granted the motion and entered judgment for Hayse. The district court concluded that Turner's argument about the shifting character of the in rem foreclosure judgment had no merit. And even if it were viable, the district court found Turner still would have lost the quiet title action on other grounds. Accordingly, Turner could not show that Hayse's representation caused any harm compensable in a legal malpractice action.

• Turner has timely appealed the summary judgment.

ANALYSIS

As the party seeking summary judgment, Hayse had the obligation to show the district court that, based on appropriate evidentiary materials, there were no disputed issues of material fact and judgment, therefore, could be entered in his favor as a matter of law. *Thoroughbred Assocs. v. Kansas City Royalty Co.*, 297 Kan. 1193, Syl. ¶ 2, 308 P.3d 1238 (2013); *Shamberg, Johnson & Bergman, Chtd. v. Oliver*, 289 Kan. 891, 900, 220 P.3d 333 (2009); *Korytkowski v. City of Ottawa*, 283 Kan. 122, Syl. ¶ 1, 152 P.3d 53

4

(2007). The district court had to view the evidence most favorably to the party opposing the motion, here Turner, and give him the benefit of every reasonable inference drawn from the evidentiary record. See *Thoroughbred Assocs.*, 297 Kan. 1193, Syl. ¶ 2; *Shamberg*, 289 Kan. at 900. An appellate court applies the same standards in reviewing the entry of a summary judgment. *Thoroughbred Assocs.*, 297 Kan. 1193, Syl. ¶ 2.

The Kansas Supreme Court has commonly described the elements of a legal malpractice claim as requiring proof that the lawyer, here Hayse, owed the party claiming injury, here Turner, a duty to use ordinary professional skill or knowledge and a breach of that duty caused the party material harm or damage. See *Canaan v. Bartee*, 276 Kan. 116, 120, 72 P.3d 911 (2003); *Bergstrom v. Noah*, 266 Kan. 847, 874, 974 P.2d 531 (1999). When the alleged malpractice rests on a claim the lawyer botched litigation, the party must show he or she would have obtained "a favorable judgment in the underlying lawsuit had it not been for the attorney's error." *Canaan*, 276 Kan. at 120; *Webb v. Pomeroy*, 8 Kan. App. 2d 246, 249, 655 P.2d 465 (1982).

Turner hired Hayse to handle the appeal in the quiet title action. So Hayse plainly owed Turner a duty of professional care in that matter. And Turner alleged a breach of duty based on Hayse's failure to argue a particular legal theory in the appeal. It's undisputed Hayse did not raise the theory. But if the theory lacks merit, Turner could not show that Hayse's decision somehow fell below a standard of ordinary professional skill. Professional care does not encompass pressing legally worthless claims—to the contrary, doing so more likely would be considered professionally incompetent. Nor could Turner show that the outcome of the appeal would have been different—he would have prevailed or at least gotten back into district court—based on an omitted argument of no legal worth.

5

We, therefore, turn to an assessment of the theory Turner contends would have saved the day had Hayse only bothered to brief it. We begin with some necessary legal background.

John Hancock filed a mortgage foreclosure action in the United States District Court aimed at obtaining a judgment for the sale of the land in Greeley County that Steele had pledged as collateral for a loan. The action concerned only that land. It was, therefore, an in rem action or one affecting a particularly identified *res* or thing—the Greeley County land. In the complaint, John Hancock endeavored to name any person or entity having some legal interest in the Greeley County land and then to serve them with notice of the foreclosure proceeding. Those persons or entities could then choose to appear to protect their respective interests. But the only interests at stake in the action were those associated with the Greeley County land. That's all any of the interested parties could lose or be liable for in the case. Given the limited scope of in rem actions, service may be given interested parties by publication rather than personally. See Fed. R. Civ. Proc. 4(e)(1), 4(h)(1)(A) (permitting service in conformity with law of state where federal district court sits); K.S.A. 60-307(a)(3) (service by publication sufficient in certain actions pertaining to interests in identified real property within state).

John Hancock received an in rem judgment from the United States District Court foreclosing the mortgage and permitting the forced sale of Steele's Greeley County land to pay the amount due. The judgment did not permit John Hancock to do anything with other assets Steele might own. And it certainly did not affect any assets of the other parties apart from their interests in the Greeley County land.

By way of contrast, Turner obtained a general in personam money judgment against Steele from the Shawnee County District Court for the unpaid legal fees due him. Turner could enforce that judgment against any nonexempt assets of Steele, including but not limited to the Greeley County land. For example, had Turner located bank accounts

6

of Steele's, he could have garnished them. Or he could have had seized and sold personal property of Steele's, such as a coin collection or vintage motor vehicles.

The parties here recognized that in disbursing the proceeds of a foreclosure sale, a mortgage on the real property creates a lien that relates back to the date it was recorded and, therefore, is superior to any later judgment lien. *First Tribune Ins. Agency, Inc.*, 2014 WL 2401398, at *12; see *Bank Western v. Henderson*, 255 Kan. 343, 348, 874 P.2d 632 (1994); *Premier Bank v. J.D. Homes of Olathe, Inc.*, 30 Kan. App. 2d 898, 900, 50 P.3d 517 (2002). Turner tries to avoid that result by arguing the in rem federal court judgment of foreclosure really operated as a general in personam judgment when it was registered in Greeley County, resulting in a priority dating only from its registration—making it junior to his general in personam judgment against Steele that he registered earlier. As we have suggested, Turner relies on the Uniform Enforcement of Foreign Judgments Act to attempt this feat.

Turner first argues a judgment entered by a federal district court sitting in Kansas qualifies as a foreign judgment under the Act. And he then submits that only general money judgments may be registered or enforced under the Act, so that converts the in rem federal judgment into a general in personam judgment. The initial proposition is likely correct. The conversion notion—the linchpin of the theory and, in turn, of this malpractice action—is not.

Under K.S.A. 60-3001(a), a foreign judgment includes "any judgment . . . of a court of the United States . . . except that no judgment of any court in this state shall be a foreign judgment in any other court of this state." We think the reference to a court of the United States rather plainly and logically includes the United States District Court for the District of Kansas. The exception to the definition for judgments of "any court in this state" refers to Kansas state courts and simply makes clear that the judgment of one district court is not somehow "foreign" in another judicial district of the state.[*]

7

[*]The Kansas Legislature added the exception to the text of the uniform act as the Uniform Law Commission drafted it in 1964. The purpose seems to have been as an amplification and not as a substantive change. The Legislature amended the language of the exception in 2000. We suppose an argument could be made that the exception includes the United States District Court for the District of Kansas as a "court *in* this state," differentiating it from all other federal courts. The exception, as phrased, would be an odd way of accomplishing such an objective. We need not resolve the point. If the federal courts sitting in Kansas were actually included in the exception, then the Act would not apply to them and Turner's theory would fail for that reason.

The Act provides that any foreign judgment filed with the clerk of a Kansas district court "has the same effect . . . as a judgment of a district court of this state and may be enforced or satisfied in a like manner." K.S.A. 60-3002. Contrary to Turner's theory, K.S.A. 60-3002 mandates that a foreign in rem judgment filed under the Act remains an in rem judgment. And, in turn, the parties may act upon the judgment as they would with an in rem judgment entered by a Kansas state court. Again, we think the statutory language on this point is clear. The reference to "like" enforcement or satisfaction establishes that the character of the foreign judgment doesn't change because it has been filed under the Act. See Webster's New World College Dictionary 844 (5th ed. 2016) ("like" defined as "having almost or exactly the same qualities").

We recognize that foreign in rem judgments applicable to real property in Kansas would be rare creatures. Seldom, if ever, would a court of another state properly exercise subject matter jurisdiction over real property in Kansas in an in rem action. Similarly, federal courts lacking the authority to act within the geographical boundaries of Kansas would not have in rem jurisdiction over real property in this state. We suppose there could be some unusual circumstances permitting those courts to enter in rem judgments pertaining to real or personal property in Kansas. But most of the foreign judgments registered under the Act necessarily would be in personam money judgments. That, however, does not support Turner's theory that filing a judgment under the Act

8

automatically renders it an in personam judgment as a result. The Act, by its plain language, does not purport to do so.

Moreover, as we have indicated, Turner's theory that an in rem judgment could be statutorily transformed into an in personam judgment sometime after it had been entered defies constitutional due process principles and protections. At its core, the Due Process Clause of the Fourteenth Amendment to the United States Constitution requires that a party receive fair notice and an opportunity to be heard before suffering a loss of liberty or property rights through the judicial process or some other governmental mechanism. *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) ("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.' [Citations omitted.]"); *Mullane v. Central Hanover Bank & Tr. Co.*, 339 U.S. 306, 313, 70 S. Ct. 652, 94 L. Ed. 865 (1950) (The Due Process Clause "at a minimum" requires that "deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case."). The Kansas Supreme Court similarly defines due process rights. See *State v. King*, 288 Kan. 333, 354, 204 P.3d 585 (2009). A civil complaint filed in federal court or a petition filed in Kansas state court must give fair notice of the nature of the claims asserted and the relief sought to satisfy due process protections. See *State Farm Mut. Automobile Ins. Co. v. Campbell*, 538 U.S. 408, 417, 123 S. Ct. 1513, 155 L. Ed. 2d 585 (2003). A party named in the action may then determine whether to respond or allow a default judgment.

In John Hancock's federal foreclosure action, the parties having some interest in the Greeley County real estate chose not to respond and, thus, declined to defend whatever interest they might have, knowing that a judgment would be limited to that interest. After the in rem judgment had been entered, John Hancock could not have unilaterally moved to change the judgment to an in personam money judgment that would permit the seizure of assets beyond the identified real estate interests. That would

9

have materially changed the claim and the relief without notice to the adversely affected parties and would violate basic due process principles. If the Act purported to permit such a transformation through the mere filing of a foreign in rem judgment—although it does not—the outcome would be constitutionally untenable and the resulting in personam judgment would be unenforceable.

In sum, then, Turner's theory that John Hancock's in rem federal court judgment became a general in personam money judgment because it was registered in Greeley County under the Act has no merit. It is inconsistent with the terms of the Act, and it would yield a judgment that could not be enforced. Hayse did not commit malpractice by declining to assert that legally empty theory on appeal in the quiet title action. Had the argument been made, it would have failed as a matter of law. In turn, the district court correctly entered summary judgment for Hayse in this legal malpractice case because he did not breach the duty of professional representation he owed Turner.

Since we have found Hayse's decision to omit the argument was professionally appropriate, we need not address the district court's alternative grounds for granting summary judgment. For purposes of those grounds, the district court assumed Hayse's omission to have been negligent but found that Turner would have lost in the quiet title action for other reasons, meaning any negligence on Hayse's part caused no legal injury or harm.

Affirmed.