No. 66,759

LARRY D. STEELE and STEELE CATTLE, INC., *Appellants*, v. THE GUARDIANSHIP AND CONSERVATORSHIP OF RUBEN L. CRIST, a/k/a R. L. CRIST, an incapacitated person, *Appellee.*

(840 P.2d 1107)

Opinion filed October 30, 1992.

*Jim D. Mills,* of Hope, Mills, Bolin, Collins & Ramsey, of Garden City, argued the cause and was on the briefs for appellants.

*William E. Metcalf,* of Metcalf & Justus, of Topeka, argued the cause and was on the briefs for appellee Marie Crist.

*Phyllis F. Wendler,* of Friesen & Wendler, P.A., of Garden City, argued the cause and was on the briefs for appellees Dennis Crist and Jeff Crist.

The opinion of the court was delivered by

HERD, J.: Larry D. Steele and Steele Cattle, Inc., appeal the denial of a motion to strike an accountant's report, which the district court treated as a motion to alter or amend a judgment or as a motion for relief from a judgment. In an unpublished opinion filed April 3, 1992, the Court of Appeals reversed the district court's decision and remanded the case for further proceedings.

Larry Steele and Ruben Crist had mutual business dealings since the 1960's. Crist operated as Finnscott Cattle Company, Inc., Farm Lease, Inc., and Finnback. Steele operated as Steele Cattle, Inc., Steele Farms (a partnership), and Walkinghood, Inc. Steele was also chairman of the board of the First National Bank of Tribune.

Ruben Crist married Marie Weishaar in 1961. He had been previously married and had two children, Dennis Crist and Sondra Crist Crook. Jeff Crist is a grandson of Ruben Crist. In 1982, Ruben was diagnosed as suffering from Alzheimer's Disease. Steele and Marie petitioned the Finney County District Court to find Ruben incapacitated, place his property in a conservatorship, and appoint them co-conservators of the conservatorship estate. The court appointed Steele, Marie, and Jeffrey Whitham as co-conservators of Ruben's estate and appointed Marie as Ruben's guardian.

The Crist children opposed the appointment of Marie and Steele as co-conservators and of Marie as guardian. An underlying dispute existed as to whether proper accountings had been made in the various business dealings between Steele and Ruben Crist.

On March 4, 1985, a bench trial was commenced to determine whether Steele and Marie should continue as co-conservators. After more than two days of evidence, however, the parties reached an agreement. The parties were charged with the responsibility of drafting an acceptable journal entry reflecting the agreement, which they were unable to do. The court then drafted a journal entry and filed it on October 4, 1985. Paragraphs 6 through 8 of the journal entry state:

"6. That any party hereto, may, at their option and within ninety (90) days of the filing of this Journal Entry, notify the Court and all other parties to this proceeding of their intent to engage a certified public accountant or C.P.A. firm, which is independent of this action, to conduct a financial examination of the business entities and/or personal accounts of Ruben Crist, a/k/a R. L. Crist and Larry Steele. Said accountant(s) shall, without unnecessary delay, and within a reasonable period of time, present a report to this Court of his/their findings and conclusions in all cattle feeding operations or other joint ventures conducted by and between R. L. Crist and Larry Steele during the fiscal years 1977 through 1981 inclusive.

"In the event a substantial deviation appears in the auditor's report, which deviation shall be defined as a discrepancy of $35,000.00 or more, then,

and in that event Larry Steele shall forthwith tender into the office of the Clerk of the District Court of Finney County, Kansas, such sums equal to the amount of the reported discrepancy, together with the amount representing the accountant's fee for services rendered in preparing said audit, which fee shall be assessed to Larry Steele. The Clerk of the Court shall thereafter disburse said sums as the Court shall direct.

"In the event that a substantial deviation does not appear in the auditor's report (i.e., less than $35,000.00), then, and in that event the amount representing said accountant's fee shall be the expense of the party requesting and engaging said accountant and/or firm for said examination. Provided further, that should said examination reveal a discrepancy on the part of Larry Steele, of less than $35,000.00, said Larry Steele may be held liable and accountable to the estate of Ruben Crist in the reported amount.

"7. To facilitate the provisions of paragraph 6, supra, the parties agree to cooperate fully and provide all records and documentation which the examining accountant or C.P.A. shall, in his sole discretion, deem necessary to complete the required report. It is further agreed that no independent accountant or C.P.A. shall be employed by any party, or any interested party, for the purpose of contesting the accuracy or validity of the findings and conclusions of the accountant selected to perform said audit and examination. The findings and conclusions of the auditor selected, as provided herein, shall be determinative of the conditions set forth in paragraph 6 of this Journal Entry.

"8. It is further stipulated and agreed by Dennis Crist, Jeff B. Crist and Sondra Crist Crook, that they shall forbear from any and all litigation against Larry Steele, his agents, servants, employers, employees or business entities arising from his conduct, activities or dealings in connection with and/or in relation to, Finnscott Cattle Company, Inc., Farm Lease, Inc., Ruben L. Crist or the Estate of Ruben L. Crist."

Steele and Marie in their capacity as co-conservators filed a notice of appeal from this journal entry but later withdrew it. The appeal was voluntarily dismissed by the Court of Appeals on December 20, 1985. On December 28, 1985, Dennis and Jeffrey Crist gave written notice of their intent to engage an independent C.P.A. firm to conduct a financial examination as provided by the district court's journal entry.

The C.P.A. firm chosen, Birney & Company, completed and filed its report with the court on November 21, 1987. The accounting firm concluded that Steele Cattle, Inc., owed Finnscott Cattle Co., Inc., $405,556.40. The accounting firm noted the report was not made in accordance with generally accepted auditing standards and, therefore, Birney & Company did not express an opinion on the cattle transactions for the period January

1, 1977, through December 31, 1981. In late March 1988, the district court notified the clerk of the district court that not all of the parties had received a copy of the report and requested the clerk to send copies to all counsel of record who had not received the report, including Steele's attorney.

On March 10, 1988, Steele, Steele Farms, and Steele Cattle, Inc., filed Chapter 11 proceedings in the United States Bankruptcy Court. Marie, as conservator of Ruben's estate, filed proof of claim for $405,556.40 in each of the Steele bankruptcy proceedings. These claims were challenged in the bankruptcy proceedings. In August 1989, upon agreement of the parties, the bankruptcy court deferred to the Finney County District Court to interpret its October 4, 1985, journal entry and the validity of the claim.

On August 4, 1989, prior to the bankruptcy court's order confirming reorganization plans and the release of the automatic stay, Steele filed a motion in the district court to strike the report of Birney & Company. After all the parties were allowed to thoroughly brief the issues, a hearing was held on the motion. The district court denied Steele's motion to strike the report. The court found the October 1985 journal entry "was intended to be the memorialization of the entire compromise and settlement achieved by the parties and the finalization of all issues theretofore pending." The district court then reasoned that regardless of Steele's characterization of the motion, it was in actuality a motion to alter or amend a judgment, the journal entry of October 4, 1985, pursuant to K.S.A. 60-259(f) or, in the alternative, a motion for relief from judgment under K.S.A. 60-260(b). The court noted that under K.S.A. 60-259(f) a motion must be filed within 10 days from entry of judgment, and under K.S.A. 60-260(b) a motion must be filed within a reasonable time after judgment. Finding that the motion was not filed within either 10 days after entry of judgment or within a reasonable time thereafter, the district court stated "principles of res judicata apply and that this matter is final."

Steele and Steele Cattle, Inc., appealed the district court's decision denying their motion to strike to the Court of Appeals. The Court of Appeals stated:

"We conclude the trial court erred in deciding its journal entry of October 4, 1985, was a final appealable order. This court has stated, 'The term "final decision" has been construed to mean " 'one which finally decides and disposes of the entire merits of the controversy, and reserves no further questions or directions for the future or further action of the court.' " ' *Skahan v. Powell,* 8 Kan. App. 2d 204, 205-06, 653 P.2d 1192 (1982) (*quoting Gulf Ins. Co. v. Bovee,* 217 Kan. 586, 538 P.2d 724 [1975]).

. . . .

"Here, the October 4, 1985, journal entry required Steele to pay the amount into court but did not further order how the funds were to be substantially disbursed. It is not a final appealable order. The lower court's decision that res judicata applies is in error because an essential requirement of the doctrine is a final judgment. *In re Estate of Reed,* 236 Kan. 514, 519, 693 P.2d 1156 (1985) (doctrine prevents relitigation of claims that 'have previously been litigated before a court of competent jurisdiction which render[ed] a judgment within its competency')."

Thus, the Court of Appeals reversed the district court's decision and remanded this case for further proceedings. Marie as well as Dennis and Jeffrey Crist then filed petitions for review. Both petitions raised the issue of whether the October 4, 1985, journal entry was a final order for purposes of K.S.A. 60-259 and K.S.A. 60-260. In addition, Dennis and Jeffrey Crist's petition for review raises five issues originally raised by Steele and Steele Cattle, Inc., in their appeal to the Court of Appeals. We granted both petitions for review.

I

The first issue we address is whether the journal entry of October 4, 1985, is a final order.

In its decision, the Court of Appeals cites *Citizens State Bank of Grainfield v. Kaiser,* 12 Kan. App. 2d 530, 750 P.2d 422, *rev. denied* 243 Kan. 777 (1988), as an analogous case. *Kaiser* can be distinguished from the instant case. In *Kaiser,* there was more than one party vying for the money paid into the court. Therefore, an order directing Kaiser to pay money into the court was not a final decision because it did not "fix 'the rights and liabilities of all the parties.' " 12 Kan. App. 2d at 534. Here, there is no dispute concerning who is entitled to the money once it is paid into the court. In fact, the October 1985 journal entry expressly provides: "In the event a substantial deviation appears in the auditor's report . . . a discrepancy of $35,000 or more," Steele

shall be held liable to "the Estate of Ruben Crist" and shall pay a sum equal to the reported discrepancy to the Clerk of the Court together with the auditor's fee. But if the deviation is less than $35,000, Steele is liable for the deviation but not the auditor's fee.

Furthermore, the transcript of the settlement agreement provides evidence that Steele intended the agreement to end all possible litigation between Ruben Crist and his business entities and Steele and his business entities. For example, when the parties presented their agreement to the court Steele's attorney stated:

"That's a term of the settlement that Mr. Steele will have and bear no further liabilities; no other further lawsuits will be filed against him . . . isn't that right . . . ?

. . . .

". . . There will be no additional lawsuits of any way, shape or form filed against [Steele] arising out of his conduct of Ruben Crist's affairs up to the present time other than has just been stated, is that correct?"

Steele claims his appeal from the October 1985 journal entry, which was later voluntarily dismissed, does not prove that journal entry was a final order. When taking his appeal, however, Steele did not seek certification by the district court judge for an interlocutory appeal pursuant to K.S.A. 1991 Supp. 60-2102(b). Years later at the hearing on his motion to strike, Steele's attorney at the time of the appeal commented upon the 1985 journal entry and appeal. He stated:

"I felt when I reviewed your order, your Journal Entry, that it really didn't accurately reflect what we felt took place. We had submitted one and Larry submitted one and so forth, and I recommended an appeal and proceeded to appeal; but my clients [Marie and Steele] at that point were tired of litigation, and on their instructions I dismissed the appeal."

In her petition for review, Marie argues the Court of Appeals' decision is inconsistent. The current appeal was taken from the district court's March 11, 1991, decision denying Steele's motion to strike. The Court of Appeals held the October 1985 journal entry was not a final, appealable judgment because the journal entry did not provide for how the funds paid into the court by Steele were to be disbursed. The March 1991 decision also did not provide how the funds paid into the court would be disbursed.

Marie contends that if the order of October 1985 is not a final order, then the order appealed from in this case is not a final order. Thus, the Court of Appeals had no jurisdiction to issue any ruling and should have dismissed this appeal.

In order to resolve this issue we must construe the October 1985 journal entry. It is a well-settled rule of law that " '[t]he construction of a written instrument is a question of law, and the instrument may be construed and its legal effect determined by an appellate court.' " *Akandas, Inc. v. Klippel,* 250 Kan. 458, 464, 827 P.2d 37 (1992) (quoting *Godfrey v. Chandley,* 248 Kan. 975, Syl. ¶ 1, 811 P.2d 1248 [1991]). Thus, we have the same authority as the district court to construe the October 1985 journal entry.

A careful examination of the record reveals that the district court journalized a settlement agreement arrived at by the parties. The court did not determine the terms of the agreement. Thus, the October 1985 journal entry was a consent decree. " 'A consent decree is essentially a settlement agreement subject to continued judicial policing.' " *Beaver v. Kingman,* 246 Kan. 145, 148, 785 P.2d 998 (1990) (quoting *Williams v. Vukovich,* 720 F.2d 909, 920 [6th Cir. 1983]). In *Beaver* we stated:

"[Consent decrees] are construed largely as contracts but are enforced as orders. A consent judgment represents a compromise between parties who have waived their right to litigation. The parties, in the interest of avoiding the risk and expense of suit, have given up something they might have won had they proceeded with litigation. For these reasons the scope of a consent judgment must be discerned within its four corners and not by reference to what might satisfy the purposes of one of the parties. . . . The explicit language of the judgment is to be given great weight. Deference is to be paid to the plain meaning of the language of a judgment and the normal usage of the terms selected. [Citation omitted.] A consent judgment should be strictly construed to preserve the bargained for position of the parties.

. . . .

". . . Court jurisdiction over consent judgments is usually retained for an indefinite period, and, unless the judgment has an expiration date written into its terms, it remains in effect until it is dissolved." 246 Kan. at 148-51.

In *Williams,* the 6th Circuit Court of Appeals states a consent degree is a final judicial order. 720 F.2d at 920. The court further explained that the prospective provisions of a consent decree operate as an injunction. This injunctive quality compels the court

to: "1) retain jurisdiction over the decree during the term of its existence; 2) protect the integrity of the decree with its contempt powers; and 3) modify the decree should 'changed circumstances' subvert its intended purpose." 720 F.2d at 920.

It is apparent from the record that the parties understood that if Steele or his business entities owed Ruben Crist or any of his business entities money according to the C.P.A.'s report, then the money owed would be paid to the estate or business entities depending upon the report results. The retention of jurisdiction after a final order is common in divorce cases for the parties who have entered into a separation agreement pursuant to K.S.A. 1991 Supp. 60-1610(b)(3). The court retains jurisdiction to ensure compliance with the separation agreement. Such retained jurisdiction does not prevent the divorce decree from being a final order.

We hold the October 1985 journal entry was a final, appealable order.

## II

Next, we address the issue of whether the district court properly applied the doctrine of res judicata when it refused to strike the October 1985 order. The Court of Appeals held the district court's "decision that res judicata applies is in error because an essential requirement of the doctrine is a final judgment."

In *In re Estate of Reed,* 236 Kan. 514, 519, 693 P.2d 1156 (1985), we stated:

"An issue is res judicata when there is a concurrence of four conditions: (1) identity in the things sued for, (2) identity of the cause of action, (3) identity of persons and parties to the action, and (4) identity in the quality of the persons for or against whom the claim is made."

Where the same facts, same parties, and same issues have previously been litigated before a court of competent jurisdiction, the doctrine of res judicata prevents a second assertion of the same claim.

Normally, the doctrine of res judicata is applied when a second cause of action is filed in an effort to relitigate issues between the same parties. See *In re Estate of Reed,* 236 Kan. 514; *Coffey, Administrator v. Gilbert,* 204 Kan. 305, 461 P.2d 747 (1969). A more appropriate basis for denying Steele's motion to strike is embodied in the law of the case doctrine. In *Renfro v. City of*

*Emporia, Kan.,* 732 F. Supp. 1116, 1117 (D. Kan. 1990), *aff'd* 948 F.2d 1529 (1991), the court explained that under the

" 'law of the case doctrine,' once issues are decided by the court, those issues should not be relitigated or reconsidered unless they are clearly erroneous or unless some manifest injustice has been imposed. This doctrine is based on public policy favoring an end to litigation and encouraging dispute resolution by preventing continued re-argument of decided issues."

We find Steele's motion to strike was either a request to alter or amend judgment pursuant to K.S.A. 60-259(f) or a motion for relief from judgment pursuant to K.S.A. 60-260(b). As the district court pointed out, a motion to amend must be filed within 10 days from entry of judgment. A motion for relief from judgment must be filed within a reasonable time after the entry of judgment. Assuming a latent ambiguity exists in the October 1985 journal entry which could not be discovered until the audit report was filed, Steele would have to file a motion for relief from judgment within a reasonable time after receiving the report in March 1988. Steele, however, did not file his motion until August 1989. Steele argues this time lapse should not be charged against him because he had filed bankruptcy and, pursuant to 11 U.S.C. § 362(a) (1988), all proceedings in the district court were automatically stayed. Steele's argument is without merit. The automatic stay in 11 U.S.C. § 362(a) creates a moratorium on any commencement or continuation of proceedings or enforcement of a prior claim *against the debtor.* It does not stay the debtor's obligation to assert his own rights in a timely manner.

We agree with the district court's decision that Steele's motion was filed too late to be in compliance with K.S.A. 60-259(f) or K.S.A. 60-260(b). Although the district court applied the doctrine of res judicata when the law of the case doctrine is more appropriate, it reached the correct result and, therefore, is affirmed on this issue. *Prairie State Bank v. Hoefgen,* 245 Kan. 236, Syl. ¶ 3, 777 P.2d 811 (1989).

### III

Steele also questions whether the district court erred in its interpretation of the parties' settlement agreement when it drafted the journal entry of October 4, 1985.

When the parties presented their settlement agreement to the district court, all parties were present and represented by counsel. After the settlement agreement was thoroughly discussed, the district judge, on the record, carefully asked each attorney individually if the terms discussed were the parties' agreed settlement. The court then asked each individual party if he or she understood everything that had been said by counsel, whether they understood the agreement, and whether he or she accepted the agreement's terms. Marie, Steele, Dennis Crist, Jeffrey Crist, and Sondra Crook indicated they understood and agreed with the terms of the settlement.

Before Steele and Marie filed their appeal in 1985, their attorney wrote to the district court judge regarding the journal entry. He claimed the journal entry was inaccurate because Steele had not agreed to waive his fee earned while acting as conservator, and he also requested adding a provision prohibiting any lawsuit being brought "against Larry Steele, Marie Crist, Jeff Whitham, their heirs, employers, employees, [and] agents . . . ." Now, Steele claims the journal entry does not properly embody the settlement agreement because it does not explicitly require an audit in accordance with generally accepted auditing standards.

Steele further contends the district court abused its discretion when it drafted the journal entry by not having a hearing as required by Supreme Court Rule 170 (1991 Kan. Ct. R. Annot. 130). Steele's attorney waived oral argument, as did all other counsel. This fact is noted in the journal entry itself. This argument is without merit.

A careful reading of the transcript of the settlement agreement and the journal entry memorializing the agreement convinces us the district court properly interpreted the terms of the settlement agreement entered into by the parties. Furthermore, because that journal entry was a final judgment, Steele should have pursued his appeal if he disagreed with the terms of the agreement as disclosed by the journal entry. This issue is without merit.

IV

Steele next alleges the accountant's report submitted in November 1987 does not comply with the October 1985 journal

entry. Steele argues Birney & Company was not an independent auditor as required by the journal entry. He alleges Birney & Company made a bid to purchase the accounting business of Don Wallace, who had been the accountant for Finnscott Cattle Company, Inc., until 1982. Steele challenges the report on the basis that the report itself admits that "the procedures performed do not constitute an examination made in accordance with generally accepted auditing standards." Additionally, the report states the following documents were not provided for Birney & Company's review:

"1. Finnscott Cattle Co., Inc. corporate tax return for the year ending November 30, 1983;

"2. Steele Cattle, Inc. corporate tax returns for the years ending April 30, 1982 and 1983;

"3. Finnscott Cattle Co., Inc. bank statements and cancelled items for the period beginning January 8, 1982 through January 31, 1983;

"4. Steele Cattle, Inc. bank statements and cancelled items for the period beginning December 21, 1981 through January 31, 1983;

"5. Copies of all cattle purchase contracts for the years 1977 through 1982;

"6. Settlement summaries, pen sheets, feed sheets, and supporting documents for the fiscal years 1977 through 1981."

Michael K. Herrman, of Birney & Company, became aware of the fact that the adequacy and contents of the report had been questioned and, therefore, he filed an affidavit with the court on October 30, 1990. That affidavit states in part:

"In the early fall of 1987, Don Wallace, who was dying of cancer, contacted us regarding the purchase of his practice. A number of meetings were held in this regard but a contract of purchase was never drafted or entered into. In addition, the report was already in the draft stage when we were contacted by Don and there was no substantive change to the report subsequent to the contact by Mr. Wallace. In no way was our independence impaired by this business relationship with Don Wallace.

. . . .

"Counsel for Larry Steele maintains that we violated both ethical and professional standards in preparing this report. The Court's Journal Entry uses the terms 'audit' and 'financial examination' interchangeably as well as the terms 'auditor' and 'examining accountant.' It is not uncommon for persons outside our profession to not understand the difference between an audit, a compilation, a review or a special examination. An audit, as accountants use the term, normally refers to an engagement entered into for the purpose of expressing an opinion as to the fair presentation of the financial statements (balance sheet, statement of earnings, etc.) of a given

entity in accordance with generally accepted accounting principles. This engagement did not lend itself to such an 'audit' in that we were not dealing with the financial statements of a particular entity. The Court's Journal Entry clearly defines our task as examining the *cattle feeding transactions* between the R. L. Crist and Larry Steele entities and reporting our findings in regard to those transactions to the Court. Therefore, it was our professional judgment that this engagement fell more closely under the category of a 'Special Report' than any other type of engagement. We strongly feel that the applicable professional standards were adhered to in the performance of this engagement."

Herrman also stated that if either party had additional evidence to present for the accounting firm's review, Birney & Company would be willing to examine it and, if warranted, revise its report. He originally communicated this willingness in a deposition he gave in the Steele bankruptcy action in January 1989. Since the report was filed in November 1987, none of the parties have come forward with additional evidence for Birney & Company's consideration.

It is clear from the record Steele did not cooperate with Birney & Company's efforts to compile the information needed for the report. For example, counsel for Dennis and Jeffrey Crist wrote to Steele's attorney several times in 1988 requesting documents needed for the C.P.A.'s report. Steele responded, stating he was not obligated to give the information requested. Furthermore, the district court's memorandum decision of March 1991 stated all parties had been ordered to cooperate in providing the necessary materials and information to permit the accountants to accomplish their assignment. The decision, however, goes on to state: "The Court of its own knowledge believes and the file itself reflects that little, if any, cooperation was afforded this endeavor from the other parties [Marie and Steele] to this action. Given the circumstances then existing, the report provided by Birney & Company is commendable, and there is nothing before this Court or in the record that supports a suggestion that this accounting firm acted other than independently or that it exercised other than its own judgment."

The October 1985 journal entry provides that any party could engage a C.P.A. to conduct a financial examination of the business entities and/or personal accounts of Ruben Crist and Larry Steele, by notifying the court and all other parties within 90 days of the

filing of the journal entry. Steele could have requested a financial examination and engaged a C.P.A., but chose not to. When Dennis and Jeffrey Crist proceeded with the financial examination, Steele did not cooperate with the C.P.A. firm conducting the examination. Steele also did not pursue his appeal of the October 1985 journal entry in order to clarify or correct any terms of the settlement agreement which he believed were incorrectly memorialized in the journal entry. Now, Steele claims the accountant's report does not comply with the October 1985 journal entry.

Marie argues Steele is barred by the doctrine of laches from claiming Birney & Company's report does not comply with the October 1985 journal entry. The doctrine of laches is an equitable principle designed to bar stale claims. When a party neglects to assert a right or claim for an unreasonable and unexplained length of time, and the lapse of time and other circumstances cause prejudice to the adverse party, relief is denied on the grounds of laches. We have stated that the mere passage of time is not enough to allow a party to invoke the doctrine. For laches to apply, the court must consider the circumstances surrounding the delay and whether there was any disadvantage to the other party caused by that delay. See *Dutoit v. Board of Johnson County Comm'rs*, 233 Kan. 995, 1001, 667 P.2d 879 (1983).

Marie points out Dennis and Jeffrey Crist paid Birney & Company $15,500 for its work that resulted in the now-contested report. Steele argues the Crists have not been prejudiced or disadvantaged because if the report is accepted, Steele will have to reimburse the Crists for the cost of the financial examination, and their expense of $15,500 is greatly outweighed by the possibility of Steele having to pay them over $400,000 based upon an inaccurate audit.

We find Steele is barred by the doctrine of laches from challenging the C.P.A.'s report. It is improper for a party to refuse to cooperate with an agreed-upon financial examination and then challenge the reliability of that examination. This issue is without merit.

V

Next, Steele raises the issue of whether the district court violated K.S.A. 60-253 by admitting the Birney & Company report

into evidence. Steele claims the Birney & Company report is a trial by masters that must be done in accordance with K.S.A. 60-253. That statute provides in part: "The master must be sworn or affirmed well and faithfully to hear and examine the cause, and to make a just and true report therein, according to the best of the master's understanding. The oath may be administered by any person authorized to take depositions." K.S.A. 60-253(a).

Marie contends K.S.A. 60-253 is not applicable because Birney & Company was not acting as a master. Instead, the accounting firm was hired pursuant to a private settlement agreement between the parties.

We agree. Birney & Company was not acting as a master and, therefore, K.S.A. 60-253 is not applicable.

## VI

The final issue is whether the district court has jurisdiction over Steele Cattle, Inc., when that company was not a party to the original action which challenged Steele's appointment as co-conservator.

Steele argues that jurisdiction over a corporation can only be acquired by serving the corporation with process in the manner described by statute. See *Butler County Comm'rs v. Black, Sivalls & Bryson, Inc.*, 169 Kan. 225, 227, 217 P.2d 1070 (1950).

As we previously stated, the October 1985 journal entry was a consent decree and represents an agreement or contract between the parties. The settlement agreement transcript specifically states that the amount of any discrepancy discovered by the accountant involving Steele *or his business entities* would be paid by Steele. As a quid pro quo for Steele's promise to pay, the Crist children agreed to bring no further litigation against Steele *or his entities*. Although a district court hearing a probate matter would normally not have jurisdiction over such non-probate disputes, the parties voluntarily submitted these disputes, as outgrowths of the conservatorship, to the district court's jurisdiction in the settlement agreement. This action began as a proceeding to find Ruben Crist to be an incapacitated person and for appointment of conservators for his estate. The district court had jurisdiction over that proceeding. K.S.A. 1991 Supp. 59-103(6) provides the probate code may be used to "make all necessary

orders relating to [an incapacitated person's estate], to direct and control the official acts of such guardians and conservators and to settle [the estate's] accounts."

We find the original action was properly before the court and the parties voluntarily submitted their settlement agreement to the district court. Although the terms of the agreement go beyond the original action brought before the court, it does not extend beyond the district court's powers. We hold the district court had jurisdiction over this matter and that Steele voluntarily agreed to be held liable for any money Steele Cattle, Inc., owed Ruben Crist or any of Crist's business entities as determined by the accountant.

The judgment of the district court is affirmed, and the judgment of the Court of Appeals is reversed.

SIX, J., concurs in the result.