(282 P.3d 632)
No. 105,552

DAN E. TURNER, *et al.*, *Appellees/Cross-appellants*, v. LARRY STEELE, *et al.*, *Appellees*. (FIRST TRIBUNE INSURANCE AGENCY, INC., and WESTERN PLAINS FUNDS, INC., *Appellants/Cross-appellees*.)

Opin-
ion filed July 20, 2012.

*Casey R. Law,* of Wise & Reber, L.C., of McPherson, for appellants/cross-appellees.

*Richard F. Hayse* and *Maren K. Ludwig,* of Morris, Laing, Evans, Brock, & Kennedy, Chtd., of Topeka, for appellees/cross-appellants.

Before STANDRIDGE, P.J., MARQUARDT and ARNOLD-BURGER, JJ.

MARQUARDT, J.: In 2000, the law firm of Turner and Turner and its principals, Dan and Phillip Turner (Turners), obtained a default judgment in Shawnee County District Court in a contract action against former clients who are members of the Steele family and various Steele family businesses (Steeles). The Turners had their judgment transcribed in the Greeley County District Court

in June 2000. After filing several affidavits of renewal, in 2010 the Turners filed a praecipe in Shawnee County District Court for a writ of special execution seeking to enforce their 2000 judgment. The writ directed the Greeley County Sheriff to attach several parcels of real property located in Greeley County and to commence a sheriff's sale of the attached real property.

Following issuance of this writ, First Tribune Insurance Agency, Inc. and Western Plains Funds, Inc. (Landowners), who had redeemed and/or purchased the real property following a mortgage foreclosure sale in 2002, filed motions to set aside (stay) the scheduled sheriff's sale and to intervene until their Greeley County quiet title action against the Turners was resolved. The Landowners appeal the district court's order dismissing their motions for lack of standing and from the order confirming the sheriff's sale. The Landowners also appeal from the Shawnee County District Court's refusal to extend the post-sale redemption period until the merits of the Greeley County quiet title action was resolved.

The Turners cross-appeal, contending the Landowners are prohibited from challenging the denial of the Landowners' motion to intervene in the Shawnee County case under the doctrine of invited error.

The Steeles have been the subject of litigation in state and federal district courts in Kansas since at least the late 1980's. See, *e.g., In re Steele Cattle, Inc.*, Nos. 94-1250 through 1253-PFK, 1996 WL 42073 (D. Kan. 1996) (unpublished opinion); *Steele v. Guardianship & Conservatorship of Crist*, 251 Kan. 712, 714-16, 840 P.2d 1107 (1992). This appeal concerns the title to Greeley County real estate that once belonged to the Steeles.

## FACTS

In October 1999, John Hancock Mutual Life Insurance Company filed a mortgage foreclosure action in the United States District Court of Kansas in a case captioned *John Hancock Mutual Life Ins. Co. v. Steele*, Case No. 99-1406-JTM. The defendants in the lawsuit were various members of the Steeles. John Hancock sought to foreclose mortgages on property the Steeles owned in Greeley County, Kansas. See also *John Hancock Life Ins. Co. v.*

*Steele*, No. 90,943, 2004 WL 794532 (Kan. App. 2004) (unpublished opinion) (discussing federal foreclosure case in a different dispute), *rev. denied* 278 Kan. 845 (2004). At the time the federal foreclosure action was filed in 1999, John Hancock filed a notice of its pending action in Greeley County as a lis pendens notice under 28 U.S.C. § 1964 (1994) and Kansas law.

In April 1999, the Turners filed a civil lawsuit in Shawnee County, Case No. 99-CV-544 against the Steeles and their businesses. The Turners claimed the Steeles hired them to provide legal services in various civil and bankruptcy matters between 1988 and 1998. Under the terms of their employment contract, the Turners alleged the Steeles still owed them approximately $560,000. After the Steeles failed to respond to the lawsuit, the Turners obtained a default judgment in excess of $632,000. The court filed its journal entry on May 17, 2000. The Turners assert that their judgment was transcribed in Greeley County, Case No. 00-C-09, on or about June 26, 2000.

Meanwhile, John Hancock's federal foreclosure action proceeded to a default judgment in that case on May 31, 2001. John Hancock filed a notice of the final judgment in Greeley County in Case No. 01-C-10 within 2 weeks.

On July 13, 2001, the United States District Court for Kansas issued a praecipe for an order of sale of the real property identified in the *John Hancock* foreclosure proceeding and directed the Greeley County Sheriff to conduct a sale of four separate parcels of real estate. Notice of the praecipe for the sale was mailed to various attorneys, members of the Steele family, and various other individuals and businesses. One of the attorneys who was sent the notice was Jim Miles of Garden City, Kansas.

A sheriff's sale of the real estate was held in January 2002. Of relevance here, the property identified as Count I property was described as:

"Southeast Quarter (SE/4) of Section Seventeen (17), Township Sixteen (16) South, Range Forty (40) West of the 6th p.m., except a tract containing 2.68 acres, more or less, described as follows: Commencing at a point 50 ft. west and 30 ft. north of the southeast corner thereof, thence West 395 ft., thence North 295 ft., thence East 395 ft., thence South 295 Ft. to the point of beginning;

"West Half (W/2) of Section Ten (10), Township Seventeen (17) South, Range Forty-one (41);

"Southwest Quarter (SW/4) of Section Two (2), Township Seventeen (17) South, Range Forty-two (42);

"Northeast Quarter (NE/4) of Section Six (6), Township Nineteen (19) South, Range Forty-two (42); and

"West Half (W/2) of Section Twenty-four (24), Township Nineteen (19) South, Range Forty-three (43), all West of the 6th P.M."

The real estate identified as Count II property was described as:

"The North Half (N/2) of Section Thirty-five (35), the West Half (W/2) of Section Twenty-five (25), and the Southeast Quarter (SE/4) of Section Twenty-five (25), all in Township Sixteen (16) South, Range Forty-two (42) West of the Sixth Principal Meridian."

At the 2002 sheriff's sale, John Hancock purchased the real properties identified as Count III and IV property. Two other parties purchased the real estate identified as Count I and II.

In April 2002, the Greeley County District Court issued an order confirming the sheriff's sale in the *John Hancock* case. The court set a redemption period for the Count I property of 3 months and a redemption period for Count II property of 12 months.

In May 2002, the rights to redeem the Count I property were assigned to Schulte Farms, Inc., Dennis L. Schulte, Charles H. Schulte, and Darvin Meurisse; the assignment was recorded in Greeley County. Shortly thereafter, these parties redeemed the Count I property and a sheriff's deed was issued to them. Several months later, Western Plains Funds, Inc. purchased the Count II property from the Schultes and Meurisse.

In October 2002, the redemption rights to the Count II property were assigned to First Tribune Insurance Agency, Inc. The assignment was filed in Greeley County, and ultimately, First Tribune redeemed the Count II property. A sheriff's deed for the Count II property was issued to First Tribune in January 2003.

In June 2004, the Turners, through attorney Jim Miles, obtained a writ of special execution from the Shawnee County District Court directing the Greeley County Sheriff to execute upon unrelated real estate in Greeley County, Kansas. At the Turners' request, this writ was dissolved before the sheriff took action.

On May 2, 2005, the Turners filed an Affidavit of Renewal of Judgment in Shawnee County Case No. 99-CV-544. In the affidavit, the Turners averred that except for approximately $2,300, their original judgment remained uncollected.

In October 2005, the Turners, again through attorney Jim Miles, filed a writ of special execution from the Shawnee County District Court directing the Greeley County Sheriff to execute upon and sell specific real estate in Greeley County. Larry Steele was the owner of that real property. The real property was sold in a sheriff's sale to the Turners for $160,000. The Shawnee County District Court confirmed the sale, and a redemption period of approximately 11 months was set. Lance Steele timely redeemed this property, and his payment to the court later was paid out to the Turners.

The Turners apparently took no further action to enforce their judgment against the Steeles until April 2010. At this time, the Turners filed an Affidavit of Renewal of Judgment in Shawnee County reflecting a judgment in excess of $1 million.

Two days later, the Turners (no longer represented by Miles) filed a praecipe for writ of special execution in Shawnee County District Court. The Shawnee County District Court issued the writ, stating that the Turners' judgment against the Steeles remained unsatisfied and "is a lien on [the Steeles'] real property." The writ directed the Greeley County Sheriff to attach specified real estate in Greeley County. The order included the properties identified in the *John Hancock* foreclosure lawsuit as Count I and Count II properties; as noted above, these pieces of real estate had been redeemed and/or ultimately purchased by the Landowners. Although not included in the record on appeal, the district court's appearance docket reflects that the writ was served on Steele family members, various Steele businesses, and Western Plains Funds, Inc.

Shortly thereafter, the Landowners filed a motion in the Shawnee County case to set aside the writ of special execution, asserting they were the record owners of the real property and that they acquired title during prior foreclosure proceedings. The Landowners denied the Turners had an enforceable lien on the property. The Landowners also stated that they had filed a petition to quiet

title in the real estate in Greeley County District Court, case No. 2010-C-3, under K.S.A. 60-601. Accordingly, the Landowners asserted that no sheriff's sale of the property should be conducted prior to the resolution of their quiet title action where the validity of the Turners' lien would be determined.

The Turners responded to the Landowner's motion and objected to staying the sheriff's sale. The Turners attached copies of letters they sent to the Landowners for payment of the Steele's judgment prior to seeking the writ. The Turners also contended their lien against the properties had never been extinguished.

After filing their response to the Landowners' motion to stay, the Turners filed a motion to strike the Landowners' pleadings. The Turners asserted that the Landowners had not filed a motion to intervene under K.S.A. 60-224 and, therefore, they had no standing to file pleadings in the case.

In an order filed May 19, 2010, the Shawnee County District Court denied the motion to stay the sheriff's sale. The court concluded the Landowners failed to "carry their burden" to justify a stay. The order was devoid of any factual findings or conclusions of law.

A sheriff's sale was held in Shawnee County on May 20, 2010, where third parties purchased the Landowners' property. The next day, the Landowners filed a motion objecting to the confirmation of the sheriff's sale. After describing the results of the sale, the Landowners reiterated that they had filed a petition to quiet title against the Turners in Greeley County. The Landowners discussed the priority of the *John Hancock* foreclosure proceeding and cited K.S.A. 60-2414(k) claiming it bars a second sheriff's sale of the property. The Landowners argued that confirmation of the sheriff's sale of the property should not take place before resolution of the quiet title lawsuit, especially since they were not made parties to the Turners' Shawnee County lawsuit prior to the execution order. In an amended pleading, the Landowners claimed that they have a reasonable basis to contest the Turners' claims. The Landowners stated that Greeley County is the only county in which the disputed title to real property could be resolved.

Several weeks later, the Turners filed a motion for an order to confirm the sheriff's sale and to pay out funds obtained from the sale. The motion requested that a sheriff's certificate of purchase be issued to the various buyers from the sale. In a subsequent trial brief, the Turners reiterated the basis for the attachment of their judgment lien and asserted that as purchasers at a foreclosure sale, the Landowners took the property with notice of the Turners' unforeclosed lien.

In further support of their position that the sheriff's sale should be stayed, the Landowners filed a motion asserting that proper venue for the resolution of the title claims was in Greeley County. Attached to the motion were various documents from the federal foreclosure action and the 2002 sheriff's sale of the property.

The Turners again filed a motion to strike the Landowners' pleading by asserting they had no standing to assert claims in the Shawnee County case. The Turners asserted that the Landowners never filed a motion to intervene under K.S.A. 60-224, and a motion to intervene was required in order for the Landowners to request any relief in the collection proceeding. The Landowners responded, arguing that their claim to title to the real estate gave them standing to seek a stay of the sheriff's sale and confirmation of the sale. They asserted the fundamental issue to be resolved involved whether the Turner's 2000 judgment lien—which was the basis for the execution and sheriff's sale—could be executed on the Landowners' property; that issue could only be resolved in the Greeley County quiet title action.

In a memorandum decision filed September 28, 2010, the Shawnee County District Court granted the Turners' motion to strike the Landowners' pleadings, concluding they had no standing in the case unless and until they filed a motion to intervene under K.S.A. 60-224. Because the Landowners had no standing, the court confirmed the sheriff's sale and found the Turners were "entitled to execution of their judgment lien."

Thereafter, the Landowners filed a timely motion to alter or amend the judgment, citing their right to be heard in the action and advising the court they had contemporaneously filed a motion to intervene. They asserted that it was erroneous for a court in

Shawnee County to determine title to real estate in Greeley County. On the same date, the Landowners filed a motion to intervene in the Shawnee County lawsuit. The Landowners noted that the Turners never questioned their right to file motions in the collection proceeding until late in the proceedings. The Landowners noted that it would be illogical to hold that titled landowners would have no standing in a subsequent proceeding seeking to execute a judgment on their real estate.

After additional briefing about standing and the Landowners' right to intervene, the Shawnee County District Court issued its final memorandum and order denying the Landowners' motion to intervene. The court reasoned that the Landowners did not satisfy the requirements of K.S.A. 60-224 because they did not claim an interest in the underlying claim in the case—the breach of contract claims of the Turners against the Steeles. The court then rejected the Landowners' arguments that they had standing as a nonparty under *First Nat'l Bank & Trust Co. v. Wetzel*, 42 Kan. App. 2d 924, 219 P.3d 819 (2009), because *Wetzel* involved factually different claims and issues. The court did hold, however, that its order did not determine title to the real property in Greeley County; instead, the order only determined that the Turners properly followed the procedures to execute on their judgment lien. Because the court held that the Landowners did not have standing, it declined to rule on their motion to extend the period of redemption until the Greeley County quiet title action was resolved.

The Landowners filed a timely notice of appeal from the Shawnee County District Court's various rulings. Two timely amended notices of appeal were also filed.

### STANDING

On appeal, the Landowners contend that the Shawnee County District Court erred in finding they lacked standing to seek a stay of the sheriff's sale and/or confirmation of the same in a collection proceeding against property that they undisputedly have a colorable claim to ownership. The Turners, in response, contend that court was correct in finding the Landowners lacked standing, as-

serting they could only possess standing by timely intervening in the Shawnee County action.

Standing is a jurisdictional question whereby a court determines whether a person has alleged such a personal stake in the outcome of the controversy as to warrant invocation of jurisdiction and to justify exercise of the court's remedial powers on his or her behalf. *Board of Sumner County Comm'rs v. Bremby*, 286 Kan. 745, 750-51, 189 P.3d 494 (2008). Standing implicates the court's jurisdiction to hear a case, and therefore, the existence of standing is a question of law over which an appellate court has unlimited review. *Bremby*, 286 Kan. at 751.

As noted by the Kansas Supreme Court, the concept of standing is one of the " 'most amorphous concepts' " in the law. *312 Education Ass'n v. U.S.D. No. 312*, 273 Kan. 875, 882, 47 P.3d 383 (2002) (quoting *Harrison v. Long*, 241 Kan. 174, 176, 734 P.2d 1155 [1987]). The concept of standing often is raised in constitutional challenges to statutes and ordinances. See, *e.g.*, *State v. Coman*, 294 Kan. 84, Syl. ¶ 3, 273 P.3d 701 (2012) (an appellant does not have standing to argue that a statute is unconstitutional as applied to third parties in hypothetical situations); *State v. Thompson*, 221 Kan. 165, 172, 558 P.2d 1079 (1976) (stating rule that unconstitutional governmental action can only be challenged by a person directly affected and such a challenge cannot be made by invoking the rights of others). Similarly, standing issues have frequently arisen when a nonparty seeks to challenge the decision of an administrative agency that affects its property interests. See, *e.g.*, *Cochran v. Kansas Dept. of Agriculture*, 291 Kan. 898, 908-10, 249 P.3d 434 (2011) (water rights owners have standing to challenge agency's award of water permits to city that may impact their permits); *Bremby*, 286 Kan. at 763 (adjacent landowners possessed standing to challenge issuance of landfill permit to third party by agency).

In this particular case, the context of standing involves the question of whether a nonparty may seek relief in the proceeding to which it was not made a party. This particular variation of standing tends to arise in just this type of proceeding—attempts to collect judgments. Below, the Landowners relied on *Wetzel* to establish

that purchasers in a foreclosure proceeding had standing to assert claims when a sheriff's sale was challenged. In that case, First National Bank (FNB) filed a foreclosure against a mortgagor and others to foreclose on various mortgaged parcels that served as collateral for loans. The court granted judgment to FNB and a sheriff's sale was held. One of the parcels of real estate was purchased at the sheriff's sale by the Wetzels, who tendered the purchase price to the court. Sometime thereafter, the judgment debtor filed a motion to set aside the sheriff's sale and return the purchase money to the bidders; the court granted the motion. Thereafter, the Wetzels filed a motion for interest on their purchase money from FNB because of the unconfirmed sale. The issue became whether the Wetzels, as nonparties to the foreclosure proceeding, had standing to seek relief. The trial court concluded the Wetzels had standing and awarded them interest expenses from FNB.

On appeal, FNB raised several challenges, including whether the Wetzels had standing to pursue any form of relief as nonparties to the foreclosure action. This court relied on numerous authorities holding that a purchaser at a sheriff's sale has "standing to raise issues in court *concerning the subject matter of the sale.*" (Emphasis added.) *Wetzel*, 42 Kan. App. 2d at 927. In those cases, the Kansas appellate courts have held that purchasers at a sheriff's sale become parties and are entitled to file motions related to the sale, the confirmation of the sale, or other matters relating to the property. The courts recognize that purchasers have a right to be heard before any order is made affecting their rights. See, *e.g.*, *Sumner County Comm'rs v. Avis*, 163 Kan. 388, 391, 183 P.2d 462 (1947) (purchaser at a sheriff's sale became a party and could appeal an order setting aside the sale); *Cowdin v. Cowdin*, 31 Kan. 528, 529, 3 P. 369 (1884) (same).

Although recognizing the factual differences of the Wetzels' claims for interest, this court found they had become parties as a result of their bid and had an interest in being heard on issues relating to the subject matter of the sheriff's sale. Based upon their bid and purchase, this court held the Wetzels had sufficient stake in the outcome of the controversy to pursue their claim for interest expenses. *Wetzel*, 42 Kan. App. 2d at 928.

The Supreme Court also has recognized that there could be statutory grounds for standing, but that there were also traditional grounds for standing. *Cochran*, 291 Kan. at 908-09. Here, the Landowners meet the traditional definition of persons with standing because they have " 'suffered a cognizable injury and that there is a causal connection between the injury and the challenged conduct.' [Citations omitted.]" *Cochran*, 291 Kan. at 908.

In the present case, the district court was correct that the facts of this particular case are distinguishable from *Wetzel* and the cases it relied upon. Here, the Landowners are not challenging proceedings directly involved in the 2002 sheriff's sale in which they purchased the Greeley County property. Instead, they are attempting to seek limited relief—a stay of proceedings—involving a different judgment creditor who is attempting to execute on the property they purchased. However, the reasoning still applies that as a title owner of real estate, they have a protectable interest in being heard before a judicial ruling, including a confirmation of a sheriff's sale, should be permitted to cloud their title to the land.

Older Kansas cases have permitted nondebtors claiming an interest in property executed upon to seek relief prior to a sheriff's sale of their property. For example, in *Yount v. Hoover*, 95 Kan. 752, 755, 149 P. 408 (1915), the court held that the title owner of real property could file an action to enjoin sheriff's sale of his property that had been executed upon for debt of another. Moreover, the title owner was not required to name the judgment creditor as a party to the action. The *Yount* court also noted that the availability of an action to quiet title did not bar the right to seek injunctive relief. *Yount*, 95 Kan. at 755-56. In *Yount*, the court held that even if the execution was invalid on its face, the owner's right to advantageously sell or mortgage the property was impacted. Thus, the owner should not be required to wait for confirmation of the sheriff's sale and an action for ejectment before seeking relief. "This is not good sense. It is not good reason." *Yount*, 95 Kan. at 760-61.

If the Landowners would be entitled to seek injunctive relief against the Greeley County Sheriff, why would they lack standing to simply seek a stay of the sheriff's sale or confirmation in the county that issued the writ of execution? In this case, the Turners

have never disputed that the Landowners have some claim to title to the real estate in dispute; they do not deny that an action to quiet title—where the validity of the Turners' judgment can be resolved—is pending. The Turners simply claim the Landowners have no standing to delay the sheriff's sale and confirmation in the case before the court.

Holders of property rights are entitled to due process of law before their property is taken. See *Hillhouse v. City of Kansas City*, 221 Kan. 369, 374-75, 559 P.2d 1148 (1977) (finding prejudgment attachment statutes unconstitutional due to lack of adequate notice procedures and failure to grant party an opportunity to be heard " 'at a meaningful time and in a meaningful manner' "). A sheriff's deed is sufficient evidence of the legality of the sheriff's sale and vests title to the property in the purchaser under K.S.A. 60-2416. A party challenging the validity of a sheriff's deed has the burden of proving its invalidity. Thus, we find that the district court's conclusion that its order confirming the sheriff's sale did not establish title missed the mark—the confirmation clearly affected the Landowners' title in a significant manner.

Title owners of real property have standing to request a delay of the sheriff's sale or a subsequent confirmation of the sale because such actions could result in a cloud on their title or otherwise negatively affect their title to the real property. See *Cochran*, 291 Kan. at 908.

### INTERVENTION UNDER K.S.A. 60-224

The Landowners do not directly appeal from the district court's holding that they do not qualify to intervene under K.S.A. 60-224. In fact, the Landowners seem to concede they do not meet the statutory standards because they cannot file a "pleading" as defined in K.S.A. 60-207. The Turners contend the only method by which the Landowners could have standing in the case was to intervene and they could have intervened but their motion to intervene was untimely.

Because the Landowners do not appeal the district court's denial of their motion to intervene, this issue (and the Turners' cross-appeal regarding intervention) is not properly before the court.

Moreover, as the cases discussed above hold, standing is not necessarily predicated upon statutory authority alone.

K.S.A. 60-224(a) provides, in relevant part:

"On timely application anyone shall be permitted to intervene in an action:

. . . .

"(2) when the applicant claims an interest relating to the property or transaction which is the *subject of the action* and [the applicant] is so situated that disposition of the action may as a practical matter substantially impair or impede [the applicant's] ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." (Emphasis added.)

Intervention as a matter of right is subject to the same mixed determination of law and fact. K.S.A. 60-224(a). *Landmark Nat'l Bank v. Kesler*, 289 Kan. 528, 533, 216 P.3d 158 (2009). In such circumstances, this court reviews the factual findings made by the district court under a substantial competent evidence standard and reviews de novo whether those findings are sufficient to support its legal rulings. *Lewis v. R & K Ranch*, 41 Kan. App. 2d 588, 592, 204 P.3d 642 (2009). Substantial competent evidence possesses both relevance and substance and provides a substantial basis of fact from which the issues can be reasonably determined. *Frick Farm Properties v. Kansas Dept. of Agriculture*, 289 Kan. 690, 709, 216 P.3d 170 (2009).

As noted by the Landowners, they had no "interest relating to the property or transaction that is the *subject of the action*" because the action was a breach of contract claim for payment of legal services. The real property was not the subject of the underlying action. Assuming this issue is properly before this court, the district court did not err in finding the standards of K.S.A. 60-224 were not met.

However, the lack of the Landowners' formal intervention did not deprive them of standing to seek the relief they were requesting. The Landowners were not challenging the Turners' judgment against the Steeles; they were simply seeking a stay of execution of the judgment against their real property until a decision was made whether the judgment was valid *against the real property*.

## Stay of the Sheriff's Sale and Confirmation of the Sale

Because the Landowners have standing to participate in the execution proceeding, the final issue is whether the district court abused its discretion in denying their motion to stay: (1) the sheriff's sale; (2) the confirmation of the sheriff's sale; and (3) the expiration of the period of redemption.

The Landowners claim the Shawnee County District Court had no jurisdiction to determine the validity of the Turners' lien on their real property. They claim that decision could only be made by the district court in the county where the real estate is located. The Turners, on the other hand, assert that under K.S.A. 60-2202, only Shawnee County could issue the writ of execution.

Because of Kansas' anachronistic statutory system, both parties are correct. However, the concepts of execution of liens and the validity of liens are legally distinct, and the jurisdiction (or more appropriately, authority) of the two district courts involved in the dispute do not conflict.

K.S.A. 60-2202(a) specifically provides that a judgment in a civil action becomes a lien on the debtor's property located within the county where the judgment is "rendered." The statute then provides a vehicle for the judgment creditor to "register" its judgment in the district court of another county, at which time the judgment becomes a lien on the debtor's real property in the registering county. However, the statute concludes that "[e]xecutions shall be issued *only* from the court in which the judgment is rendered." (Emphasis added.) K.S.A. 60-2202(a).

The Kansas Supreme Court has interpreted this final language literally. In *Needham v. Young*, 205 Kan. 603, 470 P.2d 762 (1970), the judgment creditor obtained a judgment in Edwards County and then registered it with Hodgeman County. The latter court then issued a writ of execution to the sheriff to seize the judgment debtor's real estate in Hodgeman County. The property was sold at a sheriff's sale. The owners subsequently challenged the sale because the sale price was inadequate and because the execution was wrongfully issued. The Kansas Supreme Court agreed the sale

should be set aside, in part, because it was made in violation of the express provisions of the statute requiring the execution be issued from the court where the judgment was rendered. *Needham,* 205 Kan. at 606.

Although *Needham* did not address the issue asserted by the Landowners here—that K.S.A. 60-601(b) requires that actions for the sale of real property must be filed in the county where the real property is located—the opinion explicitly interprets the authority of the "rendering court" to issue writs of execution.

Still, the Landowners' focus is not the issuance of the writ itself but the need to stay the execution process in order to determine the validity of the Turners' lien against the property. Thus, the Landowners are correct that such an action must be pursued in Greeley County. See K.S.A. 60-601.

Therefore, the question is whether, as a matter of comity and judicial economy, the district court abused its discretion in denying the Landowners' motion to stay the sheriff's sale and confirmation of the sale.

"The staying of proceedings in a state court pending determination of an action in a federal court is not a matter of right but rests on the rule of comity and involves the exercise of discretion, which will not be interfered with unless clearly abused. [Citations omitted.]" *Henry v. Stewart,* 203 Kan. 289, 293, 454 P.2d 7 (1969). We find that the comity principle applies when there are cases pending in different county courts within the state. A stay order does not terminate the action but merely postpones its disposition. Like a continuance, the question of staying an action is largely discretionary with the court. *Henry,* 203 Kan. at 293.

Courts in other jurisdictions have recognized that disputes over priority or validity of liens or claims to property executed upon in a collection proceeding can be grounds for staying a sheriff's sale or confirmation of the same. See *City of Easton v. Marra,* 862 A.2d 170, 172-73 (Pa. Commw. 2004) (court in which an execution proceeding is pending has an inherent right to stay execution when it is necessary to protect the rights of a party); see also *Wilmington Trust Co. v. Lucks,* No. 98C-02-001 HDR, 1999 WL 743255, at *7 (Del. Super. 1999) (unpublished opinion) (stay of sheriff's sale

issued until resolution of action asserting property in dispute was fraudulently conveyed); Courts have recognized that the ultimate control of the execution process, and the responsibility to see that the process is not abused, rests with the trial court. *Unity Sav. Ass'n v. Am. Urban Sciences*, 337 Pa. Super. 470, 477, 487 A.2d 356 (1984).

The lawsuit to foreclose the mortgage on the Steeles' real property was filed on October 6, 1999, in the United States District Court of Kansas. The Turners received default judgment against the Steeles on May 17, 2000; they transcribed their judgment against the Steeles in Greeley County on June 26, 2000. The judgment of foreclosure in the federal court case on the Steeles' real property was entered on April 30, 2001. That judgment was filed in Greeley County on June 12, 2001.

During oral argument, appellees' counsel argued that the federal court foreclosure action that was the basis for the Greeley County quiet title action is not a foreign judgment. Under K.S.A. 60-3001, a foreign judgment "means any judgment decree or order of a court of the United States or of any other court which is entitled to full faith and credit in this state." We hold that a judgment from a federal foreclosure lawsuit that is filed in a Kansas state court is a foreign judgment under K.S.A. 60-3001.

On May 4, 2012, the Greeley County District Court entered an order finding:

"8. Under K.S.A. 2011 Supp. 60-2414(k), real estate once sold upon order of sale shall not again be liable for sale for any balance due upon the judgment or decree under which it is sold, or any judgment or lien inferior thereto, including unadjudicated junior liens filed after the petition is filed to foreclose the senior lien against the real estate.

"9. . . . [W]hen the property was sold at the Greeley County Sheriff's sale and Defendant Turners failed to purchase or to exercise the redemption rights given to them under K.S.A. 2011 Supp. 60-2414(b) and (c), the property could not again be liable for sale for any balance due upon the inferior judgment lien they held. Why? Because the Turner Defendants' judgment lien did not come into being until <u>after</u> the John Hancock foreclosure had been filed."

The Greeley County District Court granted judgment in favor of the Landowners and quieted their "title in and to the subject real estate."

However, these issues were not properly before the Shawnee County District Court and are only relevant to weighing whether staying the execution proceedings was appropriate. Here, the Landowners established legitimate grounds to stay the sheriff's sale and the confirmation of the sale pending resolution of the quiet title action. The Turners do not dispute the Landowners' interest in the real property, only whether their judgment lien remained attached to the real estate. The Turners waited over 10 years, for reasons unexplained in the record, to execute on this real estate after obtaining their judgment. In addition, the Turners have not alleged that delaying the sale or confirmation thereof would have damaged their interests in any measurable fashion.

Therefore, we find the Shawnee County District Court abused its discretion and erred in refusing to stay the sheriff's sale and refusing to rule on the subsequent requests to stay the confirmation and to extend the redemption period. The district court's order striking the Landowners' motions for lack of standing is reversed. Likewise, the court's confirmation of the sheriff's sale is vacated.

Reversed and vacated.